OVERTON, Trustee, *v.* MEMPHIS & LITTLE ROCK R. Co., as reorganized.

*(Circuit Court, E. D. Arkansas.* March 24, 1882.)

1. EQUITY—RELIEF, WHEN REFUSED—DISPUTED EQUITABLE CLAIM.

Where the relief sought is founded upon a disputed equity, a court of equity will with great reluctance and hesitation take the possession from a defendant holding a clear legal title. So, where none of the actual holders of the stock or bonds of a railroad company who would be affected similarly with the plaintiff were before the court, the court ought to hesitate before appointing a receiver, on the ground of a possible injury to one holding nothing more than a disputed equitable claim for deferred stock.

2. SAME—RECEIVER, WHEN NOT APPOINTED.

It is not the province of a court of equity to take possession of the property and conduct the business of corporations or individuals, except where the exercise of such extraordinary jurisdiction is indispensably necessary to save or protect some clear right of a suitor, which would otherwise be lost or greatly endangered, and which cannot be saved or protected by any other action or mode of proceeding.

In a cause pending in the supreme court of Arkansas, on appeal from the chancery court of Pulaski county, wherein the state was complainant and the above-named railroad company (as intervenor) was defendant, that court decreed foreclosure of a mortgage executed by a former company, owner at the time of the road, and ordered a sale of the road and rolling stock. Four days after this decree was rendered, complainant filed in this court his bill claiming to be entitled to some deferred stock of the railroad company, and praying the court to compel issue thereof. The company disputed his right to such deferred stock. Afterwards complainant filed an amendment to his bill, setting up the judgment of the supreme court and decree for sale of the road; the rapid approach of the day of sale; that the officers of the defendant company were taking no steps to prevent a sale; alleging his inability to raise the large sum required to pay the judgment; averring that he was informed and believed that certain holders of the bonds of the defendant railroad company would raise the money "if they could be assured of repayment by reception of the income of the property," and praying the appointment of a receiver with power to borrow the money, pledging the income of the road, and pay the judgment.

*T. B. Turley* and *W. M. & G. B. Rose,* for complainant.

*B. C. Brown,* for defendant.

CALDWELL, D. J. 1. The plaintiff is not the legal owner or holder of any of the stock or securities of the defendant company. He

claims in his bill to be equitably entitled to $1,500,000 of deferred stock, but his right to this is disputed by the company.

"Where the relief sought is founded upon a disputed equity, a court of chancery will with great reluctance and hesitation take the possession from a defendant holding the clear legal title." *Schenck* v. *Peay*, 1 Woolw. 175.

Not one of the actual holders of the stock or bonds of the company, who would be affected similarly with the plaintiff by a sale of the road under the decree, are before the court. In view of this fact the court ought to hesitate before appointing a receiver on the ground of a possible injury to one holding nothing more than a disputed equitable claim for deferred stock.

2. While the bill alleges the trustee is unable to raise the money to provide for the decree "on his own account," it does not allege that his *cestui que trust* cannot do so. And it does allege "that the bondholders of said road and others interested therein, as he is informed and believes, would and will advance the money to provide for said decree, if they had any assurance that it would be refunded to them out of the earnings of the road." No order of this court, in advance, is necessary to give this assurance, or for the protection of such of the holders of the stock and securities of the company as may provide the money to pay the decree or purchase the property at the sale. Upon payment of the decree they are entitled to be reimbursed their money, and, to this end, to be subrogated to all the rights of the state under the decree, or, upon a purchase, they are entitled to all that a sale under the decree can impart, including the right to the immediate possession, and, of course, the right to receive the earnings of the road, as against all junior encumbrancers, until they are reimbursed, and a receiver of this court would have no greater powers.

3. Suppose the receiver to be appointed and the proceeding to run its course, as contemplated in the bill, it is quite obvious the court would be burdened with the administration of the business affairs of the company for a long period. Undoubtedly there are cases in which a court of equity may, through its receiver, take possession and control of the business of corporations and individuals. But it is a jurisdiction to be sparingly exercised. None of the prerogatives of a court of equity have been pushed to such extreme limits as this, and there is none so likely to lead to abuses. It is not the province of a court of equity to take possession of the property, and conduct the business of

corporations or individuals, except where the exercise of such extraordinary jurisdiction is indispensably necessary to save or protect some clear right of a suitor, which would otherwise be lost or greatly endangered, and which cannot be saved or protected by any other action or mode of proceeding. If, as in this case, the loss or danger can be averted by the lawful action of the suitor, or those he represents, he cannot successfully invoke the exercise of the extraordinary powers of a court of equity, because that course would be more agreeable or convenient. Should the plaintiff, or those he represents, pay off the decree, or purchase under it, the rights and equities thus acquired will be clear, and within the protection of a court of equity.

4. The danger that all holders of stock or securities junior to the terms of the decree will be cut off by a "stranger, or third party," purchasing at the sale, is too slight to be seriously considered. The disproportion between the value of the property and the amount of the decree precludes the idea of any one being permitted to purchase the property discharged from a trust in favor of the stock and bondholders. It is the duty of the directory to protect the interests of the stockholders of the company, and they are not likely to incur the liability that a neglect of that duty would impose. But should they do so, it is, as we have seen, within the power of the plaintiff, and other parties in interest, to protect themselves against loss by reason of the fraud or neglect of the directory. And, if the decree is not satisfied, and the property goes to sale, it is as certain as any future event can be, that it will be purchased by or for the company, or by or for some one or more of the stock or bondholders, whose relations to the company and the other stockholders will be such that they will take the property charged with a lien in favor of the latter.

Motion for receiver denied.