SALTER *et al. v.* TILLOTSON *et al.*

1. Whether this court has jurisdiction by a fast writ of error to adjudicate upon the refusal of the judge to attach *pendente lite* for the violation of a restraining order, or of an order requiring the payment of money into court in default of giving bond and security for its ultimate payment, *quære?*

2. Assuming the existence of such jurisdiction, there was no reversible error. Where, upon an equitable petition, an order was granted restraining the defendant from paying out certain money in his hands until the further order of the court, and afterwards the plaintiff presented to the judge a petition alleging that the defendant had paid out this money in violation of the court's order, and praying that he be then required to pay the amount into the registry of the court or give bond for its forthcoming to answer the final judgment in the case, or in default thereof that he be attached for contempt, and it appearing upon the hearing of this petition that the defendant was insolvent, that the money was not in his possession, custody or control, that he was unable to raise that amount, that he could not give the bond required, and that he had paid out the money in good faith and under the honest belief that he was authorized so to do by the judge who had granted the restraining order, and with reason for so believing which the judge deemed satisfactory, this court will not reverse

a judgment of the court below refusing to order the process of attachment to issue.                          *Judgment affirmed.*

March 26, 1892. By two Justices. Argued at the last term.

Practice in Supreme Court. Attachment for contempt. Before Judge RONEY. Richmond county. At chambers, January 30, 1892.

On November 14, 1891, Salter *et al.* presented their petition alleging that they had purchased pools on a certain horse-race to the extent of several hundred dollars, which were sold by Tillotson and he had the money; that the race was about to take place in violation of the rules of the National Trotting Association, under which it was advertised to take place; and that Tillotson was a non-resident of the State. They prayed for injunction and immediate restraining order to prohibit Tillotson or the Augusta Jockey Club (under the auspices of which the race was run or for which as agent Tillotson was selling the pools) or either of them from paying out the money. The judge granted an order restraining the defendants from paying out any of the funds until the further order of the court, and requiring them to show cause on November 18, why "this rule should not be made absolute." This order stated that it was not intended to stop the race as ordered by the club for that day, nor to prevent the sale of pools or betting on the races as advertised for that day. On the same day due service was made on Tillotson and the president of the club. In the evening Hull and Lyons called on the judge and stated that the order was operating harshly upon the club, that they greatly feared the racing advertised by it would be seriously interfered with, as no one would buy pools on the races for fear of legal interference, and that every material allegation in plaintiffs' suit was false; and undertook to show the judge wherein they were false. He said to them that the order was granted solely upon the

facts stated in the petition, that had he had the information they then gave him he would have refused to grant it, that a court of chancery was always open and they could at any time ask for a modification or revocation of the order, and if they would place what they had said to him in the shape of affidavits on the following Monday, he would revoke the restraining order, and that they could announce to the pool-seller and parties desiring to purchase pools that no further legal interference would be had with the racing until the officers of the club were heard.   According to the affidavits of Hull and Lyons, the judge told them that he would revoke the restraining order on the following Monday; and when they were about to leave the judge's residence Hull called his attention to the fact that the order had blocked all further proceedings, as no money could be paid out of the pools and all future dealings were thus rendered impossible, and that the existence of such a condition of affairs was operating seriously against the success of the meeting; and the judge thereupon told them they could tell the pool-seller that he need not regard this order any further, and that there would be no further interference in this matter by the court. They then left and told Tillotson what was told them by the judge, and thereupon Tillotson paid the pools to the parties entitled to them.

On November 16, came on to be heard an application for relief from the restraining order, but before its presentation, the plaintiffs presented a petition alleging that Tillotson had paid out the money contrary to the order of the court, and asking for an attachment against him for violation of the order.   On November 17 the court ordered that Tillotson make answer to this charge at the regular hearing on November 18, and show cause why he should not be attached for contempt in violating the court's orders.   After some continuances

the hearing was had on November 27. The defendants demurred upon the ground that the petition showed that plaintiffs relied upon an illegal contract to sustain their action, and to determine their rights the court would be called upon to decide the validity of a contract admitted to be illegal. The answer of Tillotson to the rule to show cause as to the contempt, stated, among other things, that by reason of the restraining order he refused to pay the pools at the time for their payment, and sacredly guarded his trust and the order of the court, and while he did pay out pools in his hands he had not the slightest intention of disregarding the order; that he was not guilty of any contempt; that he was simply an employee working for commission on the business transacted, and for that reason had no motive to have paid the money held in his hands as a pool-seller; and that the fact of his paying out the pools should not be construed into any feeling of contempt or disregard that he had for the orders of the court, and he is willing, as he has always been, to carry out any decree that the court might find against him. The judge held up his decision until December 5, when he passed an order continuing as to Tillotson the restraining order of November 14, stating that he would not do this but for the position maintained by plaintiffs' counsel, that the facts set forth in their petition made the transaction a gambling contract, and allowed them to recover from defendants the money wagered upon the horse-race.

On December 8 the plaintiffs filed their petition alleging that Tillotson was a non-resident of the State, and insolvent; and praying for an order requiring him to pay over to such person as the court might name, the money in question, or give good and sufficient bond to plaintiffs for payment of it upon the final determination of the suit. On December 9, in aid of the restrain-

ing order and in view of the allegations made in the
last petition, the judge passed an *ex parte* order requir-
ing Tillotson to pay the money to the clerk of the su-
perior court or give bond to answer any judgment that
might be obtained in the case; and stating that "he is
allowed five days from the date of this order to comply
with its terms, or to deny its allegations of non-residence
or insolvency, but in default of either, to be held in
contempt of court." It being made to appear to the
court that Tillotson was absent from the State for the
purpose of bringing his family to become permanent
residents here, the court passed an order reciting that,
there being a misapprehension by the attorney of Til-
lotson as to the scope of the order granted December
9, in this, that it was only necessary to show residence
in Richmond county to revoke the same, and the order
upon its face possibly admitting of such construction, it
was set aside, and in lieu thereof Tillotson was required
to show cause on December 31 why each and every
prayer in the petition should not be granted. On De-
cember 31, upon hearing, an order was passed direct-
ing Tillotson to pay the money to the clerk, or file with
him a good and sufficient bond for the payment of the
final judgment in the case, by or before twelve o'clock
on January 1, 1892, unless he desired to make answer
before that time, in which event he was permitted to
make answer *instanter* why he should not be attached
for contempt. Thereupon Tillotson answered: He has
not the money, does not know where to get it, and is
unable to procure any bond though he has made every
effort to do so. When first served with the restraining
order he sacredly guarded its commands and refrained
from violating them. This he continued to do until late
in the night of November 14, when he was informed by
Hull and Lyons, officers of the club, in whose intelli-
gence to understand and integrity to correctly and hon-

v 89 3

estly advise he had the utmost confidence, that the judge had told them to instruct him that he need pay no further attention to the restraining order, that the judge would revoke the order on the next day and would interfere no further in the matter ; and they told him he could and should pay out the funds held by him as pool-seller. This he did, though it was more to his interest to have retained them, as he was simply working on a commission with absolutely no interest as to who might receive them. He intended no contempt to the orders of the court or any disregard therefor, but his conduct was guided by the determination to abide strictly by the orders of the court.

The order for attachment was refused, because (1) the rule now of force is one to require the payment of the money into court or to give bond for the eventual condemnation money, and not a rule to show cause why Tillotson should not be discharged ; (2) the rule is not issued against any of the other defendants who are amenable to the process if the rule should be made absolute against Tillotson ; (3) it appears as a matter of fact that there was no intention on the part of Tillotson to disobey the order of court, he believing that the restraining order had really been revoked ; and (4) that in paying out the money he acted pursuant to the order of his superior officers who are themselves responsible in the premises, if a liability or responsibility rests on either.

FLEMING & ALEXANDER, for plaintiffs.

C. H. COHEN, for defendant.