### JUDSON, Assignee, etc., v. COURIER Co.

*(District Court, S. D. New York. July 23, 1885.)*

1. BANKRUPTCY—FRAUDULENT ASSIGNMENT—PRIOR MORTGAGE AVAILABLE—EQUITABLE RELIEF.

   An assignee in bankruptcy filed a bill in equity to set aside a transfer of property by the bankrupt to the C. Co., for the payment of the latter and other creditors specified, according to an agreement between them. As a part of the arrangement one of the creditors transferred to the C. Co. all his rights in the same property under a chattel mortgage executed some months previous, which mortgage appeared to be for a valid consideration, and its validity was not attacked by the bill. Upon a sale of the property by the C. Co. pursuant to the agreement under its various titles not enough was realized to equal the amount due upon the mortgage, the sale being found to have been fairly made, and for a fair price. *Held,* that though the transfer by the bankrupt of his interest in the property was fraudulent and invalid under the bankrupt act, the C. Co. was nevertheless entitled to the security of the mortgage, which was not attacked by the bill; and that the complainant was not entitled to any account, or to any substantial relief: and that the bill should therefore be dismissed, but without costs.

2. AMENDMENT—STATUTE OF LIMITATIONS—AVAILABLE TO PRIVIES.

   An amendment of the bill should not be allowed setting up a new cause of action and requiring additional parties; still less where the statutory period of limitation has expired, and the defendants, as privies in estate, are entitled to the benefits of the statute.

3. FINAL DECREE—RULE 86—TIME FOR APPEAL—REV. ST. 4981, CANNOT BE ENLARGED.

   A decree dismissing the bill without costs as respects the only defendant who appeared to litigate is a final decree, and is sufficient in form, under rule 86, in equity. The time for appeal prescribed by section 4981 in bankruptcy cases cannot be extended by the court after that time has elapsed.

*E. H. Benn,* for the assignee.

*Hamilton Cole,* for the Courier Co.

BROWN, J.    When this cause was before this court upon the first hearing, on the pleadings and proofs, the bill was dismissed upon the merits, because it appeared to the court that the proofs failed to show that at the time of the tripartite agreement McCune, the representative of the Courier Company, knew that the assignment or conveyance from Queen, which was made in connection with the tripartite agreement of October 27th, was made in fraud of the provisions of the bankrupt act, (section 5128;) and because the facts seemed to show that McCune had no knowledge of any other debts than those provided for, and no notice of the probability of any such debts, and did not omit reasonable inquiry upon that subject in view of the previous assurances made to him by the bankrupt that the menagerie debts, and his debt to Howe, were "all he owed in the world."

Upon the reversal in the circuit court I do not understand any different view of the law to be expressed by the circuit judge. The ground of reversal, as I understand, was that McCune did not make reasonable inquiry as to the existence of other creditors, and that, not having done so, he is chargeable with knowledge of what, it was thought, he might have ascertained by such inquiries.

Upon the present hearing the defendant Queen has been again examined. McCune having died, his former testimony was used. It now appears, according to the testimony of Queen, what did not appear before, that the subject of Queen's indebtedness was spoken of between him and McCune at St. Louis at the time of this tripartite agreement. McCune testified that it was not spoken of, evidently having forgotten it. Queen, upon his cross-examination, testifies, in view even of the conversation at St. Louis as to his debts, that it was McCune's intention, as he understood it, to settle with all the creditors that he knew of; and that he did pay or settle with all that he knew of. Moreover, Queen speaks of showing to McCune the memorandum of his liabilities, which would seem to have been not long before the arrangement with Howe; and this memorandum, as subsequently explained, I understand showed no debts but those covered in the tripartite agreement. These circumstances would seem to me still, as the testimony upon the former hearing appeared to me, sufficient ground for an entirely reasonable and honest belief on the part of McCune that there were no other debts of Queen than those provided for in the tripartite agreement; and as a fact in the cause I must find that he did not, in my judgment, have knowledge of any other debts, and had no reasonable cause to suspect others, and did not suspect the existence of any other obligations of Queen. The evidence shows that each of the various parties was acting for himself, and that the arrangement finally effected by the tripartite agreement was fair and honorable to all, and honorably carried out by the Courier Company at great trouble and inconvenience, and a large advance of money.

In view, however, of the comparatively small difference in the evidence as it stands now from what it was on the former hearing, and

considering the different view of the facts, or the different interpretation put upon them, by the circuit court in the former case, I should hesitate to dismiss the bill upon this difference alone. But there is another and controlling reason for doing so. On the former hearing, as the cause was dismissed upon the merits, it was unnecessary to consider what parties might be necessary in order to render an affirmative decree for the complainant. The presence of other parties was certainly not necessary to a dismissal of the bill if the evidence did not show any merits in the complainant. The circuit court, in ordering a new trial upon the merits, pointed out certain defects of parties; and Dinnegar, Colvin, and Cole have accordingly been introduced, for the reason, as I understand, that the Courier Company made title in part through the claims transferred to it from them; and also because they are necessarily interested in any decree that should overturn the tripartite agreement under which they had a pecuniary claim against the Courier Company. One of them has, in fact, recovered a small judgment against the company, based upon the covenants of that agreement.

But the Courier Company in connection with the tripartite agreement also took by assignment from Dinnegar such title to the property in question as Howe acquired from Queen by the bill of sale of October 9th. There is no question upon the evidence that Queen owed Howe at that time at least the $24,000, which, from the proofs in bankruptcy, seem to have been transferred by Howe to Dinnegar. The bill of sale to Howe, together with his agreement for resale to Queen, was a security for the payment of those claims. Howe transferred his title under the bill of sale to Dinnegar, and Dinnegar transferred the same title to the Courier Company as part of the transaction in making the tripartite agreement. The notes for which the bill of sale was security not being paid, the security to which Dinnegar was entitled under the bill of sale transferred to him by Howe was available to the Courier Company, because Dinnegar had transferred it to them in connection with and as a part of the tripartite agreement, and because that agreement thereby became the substituted security provided for the payment of the claims for which the bill of sale was a security; and though the provision for the payment of these claims was not absolute under the tripartite agreement, it was such as was agreed on by the parties, and gave to the Courier Company, for the purpose of executing that agreement, all the rights and powers of Dinnegar or Howe under the bill of sale. I am satisfied from the evidence that the net value of the menagerie property did not exceed the amount of Dinnegar's claim and lien upon it under the bill of sale thus transferred from Howe, viz., $24,000; and that the sale of the property made by the Courier Company was as beneficial as possible. Howe's title under that bill of sale is therefore available to the defendant company as a defense; and that title cannot be disregarded, nor can it be set aside as fraudulent, except upon

a bill for that purpose, or a bill which at least contains all suitable and necessary allegations for such an adjudication. To such a bill Howe would be a necessary party defendant.

The transfer to Howe, being a *bona fide* security, if it was invalid under the bankrupt act, it could only be so under section 5128, because Howe also had "knowledge" that the transfer was in fraud of the act. To such an inquiry and to such an adjudication Howe is a necessary party, because, in the language of the supreme court in the case of *Gaylords* v. *Kelshaw*, 1 Wall. 81, "it is his fraudulent conduct that requires investigation." *Miller* v. *Hall*, 70 N. Y. 250. Such an investigation would, in effect, be a substantially new and different cause of action from anything presented by this bill of complaint. The few lines in the present bill denying any title in Dinnegar, and stating that any title which he claimed was fraudulent, are wholly insufficient to be treated as a statement of a cause of action seeking to adjudicate as fraudulent, under the bankrupt act, the transfer to Howe on October 9th. As respects that transfer to Howe, there is not a word in the bill. Howe's name is not mentioned; much less is there any charge of knowledge on his part that that transfer was in fraud of the bankrupt act. A further amendment of the bill for the mere purpose of making Howe a party might be allowed if all other material allegations were found in the bill. But the mere introduction of Howe as defendant would be ineffectual. New allegations to attack the conveyance to Howe as fraudulent are essential; in other words, a new cause of action, as well as a new party, would be necessary to reach the case. A complainant is not at liberty to make a new and different case by way of amendment. *Shields* v. *Barrow*, 17 How. 130. But if ordinarily such latitude of amendment might be given, a conclusive reason why it should not be allowed in the present case is that more than six years have elapsed, the statutory period of limitation, since all the facts appertaining to the transaction were within the knowledge of the complainant. It is already more than six years since the original bill was sworn to. Upon an original bill for the purpose of assailing the transfer to Howe as fraudulent, a plea of the statute of limitations would be available to the Courier Company as well as to Howe; because in cases of title the statute of limitations is itself a muniment of title, and is available to all who succeed in interest. If an original bill could not be maintained after this lapse of time an amendment, equivalent to a new bill, should not be allowed in a case like the present, where there are no strong equities to require it, but where, in my judgment, the equities are all the other way. So far, therefore, as the matter is within the discretion of the court, such an amendment should not be permitted.

If it be said that as respects the transactions that are set forth in the bill the complainant is entitled, according to the view of the facts taken in the circuit court, to a decree declaring the tripartite agree-

ment fraudulent as to the complainant, it is obvious that this alone would be a merely nominal and fruitless decree. The substantial relief prayed for is an account for the value of the property sold by the Courier Company. If not entitled to such an account the complainant is not entitled to any substantial relief. The title acquired through Howe authorized the sale actually made by the company; and, as I find, protects the company, because the claims secured by that title exceed the whole proceeds received upon a fair and lawful sale of the property; and as the bill does not assail that title, and as an amendment setting up a new cause of action with new parties after the lapse of the statutory period of limitation should not be allowed, it follows that the complainant does not show himself entitled to any substantive relief, and that the bill should therefore be dismissed, but without costs.

---

The complainant having failed to appeal within 10 days, as required by section 4981, subsequently moved the court to extend the time for an appeal; or that a decree which had been entered simply dismissing the bill without costs, and which did not refer to the other defendants who had not appeared, and against whom an interlocutory decree had been entered *pro confesso*, might be set aside as insufficient, and a further decree entered reciting the proceedings for an interlocutory decree and the disposition of the case as to each and all of the various parties, from which an appeal could be taken.

BROWN, J. Under rule 86 of the supreme court, in equity, directing the form in which decrees shall be drawn, and prohibiting the insertion of all other matters, I think the decree entered in this case by the defendants' solicitor is correct. It is final, moreover, in character, and completely disposes of all the material issues raised by the pleadings. Nothing further remains to be done by the court as respects any right of either the complainant or the defendants. Under this decree, upon the essential issue, the interlocutory order *pro confesso* against the defendants who did not answer becomes wholly immaterial.

I cannot find, therefore, that the decree already entered is either incorrect in form or deficient in substance as a final decree. By it the court "ordered, adjudged, and decreed, that the complainant's bill herein as amended be, and the same is hereby, dismissed without costs." The further direction that the clerk enter judgment accordingly is surplusage and immaterial. The limitation of the time within which appeals from a final decree in bankruptcy may be taken is definitely fixed by statute. Rev. St. § 4981. It has been repeatedly held that the time prescribed by statute cannot be enlarged. *In re Alexander*, 3 N. B. R. 29, 32; S. C. Chase's Dec. 295; *In re Kyler*, 6 Blatchf. 514; *Sedgwick* v. *Fridenberg*, 11 Blatchf. 77. Under the Code

the same rule prevails in the state courts. *Kelly* v. *Sheehan*, 76 N. Y. 325.

I am compelled, therefore, to hold the decree regular and final; and as the notice of appeal was not given within the time prescribed by statute, I have no authority to extend the time after that period has expired. The motion must therefore be denied in both aspects.