. FULLER et al. v. MONTAGUE et al.

(Circuit Court of Appeals, Sixth Circuit. November 6, 1893.)

No. 97.

1. EQUITY—LACHES.

In 1892, nearly 30 years after attaining majority, complainants claimed an interest in land, asserting that in 1844 such interest had been fraudulently conveyed by their uncle, cotenant with their father, who died in 1846. They were aware that their father had owned such interest, but accepted their uncle's assurance that it had been conveyed to him, until 1887, when they discovered the facts relied on to sustain their claim. *Held*, that there was such laches as would preclude relief against bona fide purchasers in possession for over 30 years. 53 Fed. 204, affirmed.

2. PARTITION—WHO MAY MAINTAIN.

A suit for partition cannot be maintained by persons not having the legal title to the lands, against persons in possession claiming adversely on a bill seeking to establish complainants' title and to invalidate that of defendants, on the ground of fraud with which defendants are not connected. Per Swan, District Judge.

Appeal from the Circuit Court of the United States for the Southern Division of the Eastern District of Tennessee.

In Equity. Bill by John P. Fuller, James H. Fuller, and Simeon Fuller against Theodore G. Montague and others to establish an interest in lands, and for partition. One defendant demurred, and the others joined in a motion to dismiss the bill. Demurrer sustained, and bill dismissed. 53 Fed. 204. Complainants appeal. Affirmed.

Statement by SWAN, District Judge:

The bill in this cause is nominally for partition. The appellants were complainants in the court below. They allege that they are the children and sole heirs at law of Simeon Fuller, Jr., who died intestate in the year 1846, seised in fee simple of the undivided one-half of the following lots or parcels of land, viz. lot No. 54, Chestnut street, the north half of lot 38, Chestnut street, and the south half of lot 37, Market street, as said lots are numbered and described on the original plot of Chattanooga, Hamilton county, Tenn. That the lands were purchased by appellants' father, Simeon Fuller, Jr., and their uncle, Moses Pressley, and conveyed to them jointly in 1839 by the commissioners of Chattanooga, and the conveyance was duly recorded in the office of the register of Hamilton county. That Fuller and Pressley held them as tenants in common until the former's death, in 1846, complainants being then between four and seven years of age. That the lands remained vacant and unoccupied until after Fuller's death. That "the said undivided interest has never been conveyed to any one by the said Simeon Fuller, Jr., his heirs or legal representatives, nor has the title in any way been alienated from him or them * * * and the same is now held by your orators, his only heirs at law, these never having alienated the same, nor been actually ousted therefrom, nor have they been in any way notified of any repudiation or adverse claim or holding; and they expressly deny that there has been any legal or valid adverse possession whatever to be charged against them, or any effective repudiation of their holding in tenancy in common, even till this day. * * * That the records of the Hamilton county registry office clearly show your orators' title, and have always given, and now give notice to all the world that the interest of their ancestor, Simeon Fuller, Jr., has never passed, nor his title been divested, from him nor his heirs. * * * That the said Simeon Fuller, soon after the joint purchase aforesaid, was absent in a distant state, and that he intrusted to Moses Pressley, his cotenant, the care and oversight of the property thus held as an investment,

to pay taxes thereon, and to do whatsoever might be necessary to realize the object of such investment, he having full faith in the skill and integrity of his brother-in-law; and the said Pressley for some time fulfilled faithfully the terms of the express trust and his obligations as a tenant in common with your orators' ancestor, and so your orators' ancestor continued to repose confidence in him during life. * * * But your orators say that the said Moses Pressley, two years before the death of Simeon Fuller, namely, in 1844, and while the latter was an invalid, had sold his own interest in said lots to M. Whitley, of Walton county, Ga., and in betrayal of his obligation to Simeon Fuller as cotenant, and under the said express trust so conferred upon him, and undertaken by him and acted upon, he so executed the deed to said Whitley as to include apparently the interest of the said Simeon Fuller therein, and as to purport to convey the entire title, without, however, naming or even referring to the said Simeon Fuller's interest. And the said Pressley, for the purpose of concealing the fraud thus committed upon the rights of Simeon Fuller, and thus effectuate the fraudulent wrong, connived and conspired with the said grantee, Whitley, to hide the fraudulent conveyance for seven years, and withhold it thus from registration during the period of the statute of limitations, supposing that this statute would run in secret, and bar an action in seven years; and accordingly the said deed was so concealed until the year 1851,—seven years, and five years after the death of Simeon Fuller. Then, and not until then, it was acknowledged and registered. * * * That their ancestor never did know, and had no means of knowing, of the existence of the said fraudulent deed, and had no suspicion of the unfaithfulness of his relative and cotenant, and neither had your orators afterwards. * * * That said conveyance was wholly fraudulent, and the same was fraudulently concealed. That there was never any open repudiation by the said Pressley of his trust or of his obligation as cotenant with said Simeon Fuller. * * * That before said deed was registered, and ever afterwards, the wrongdoer continued to conceal, by various acts and devices, the cause of action existing in said fraudulent conveyance from the knowledge of your orators, and for this purpose abused their infant minds and the natural confidence of your orators in him, particularly by misrepresentations, chiefly to the effect that he had owned lands together with their father, but before his death their father had sold them all to him. Your orators being wholly incapable of understanding any kind of business, and relying upon the word of their uncle, and, besides, residing with him at a great distance from Chattanooga, in the state of Georgia, grew up under the influence of such misrepresentations without the least idea or suspicion that they had any rights in the matter. Nothing ever occurred to suggest such idea or suspicion until the year 1887, when your orator, John P. Fuller, while, at the request of Mrs. Pressley, widow of the said Moses Pressley, examining some old papers to which your orators had never before had access, discovered the original deed of the commissioners of Chattanooga to Simeon Fuller and Moses Pressley, and, not finding any deed from his father to Moses Pressley, he for the first time suspected that something was wrong, and his reflections led to an investigation whereby the fraud was discovered." Complainants deny laches. Such, mainly in their own language, is the story of the wrong complained of, and the means by which it was effected.

The bill avers that the defendants derive title to the premises in controversy under the said deed to Whitley through a series of mesne conveyances, and that "all the successive grantees under the said deed have had full record that the interest of Simeon Fuller has never in any manner been conveyed, even the said Whitley deed not mentioning that interest in express terms." It claims that the defendants are chargeable with notice of the fraud committed, and with knowledge of want of title. This claim is based on the record of the commissioners' deed to Fuller and Pressley, and the fact that no conveyance by Fuller of his interest appears of record in Hamilton county.

The prayer is that "the court will grant complainants jointly an equitable partition with said defendants, * * * and other proper relief."

The bill was filed November 1, 1892, against the 12 defendants, most of

whom held, in severalty, parcels of the various lands of which partition is sought.

One of the defendants demurred to the bill for want of equity and on the ground of the laches of complainants. The other defendants united in a motion to dismiss the bill on the same and other grounds. The demurrer was sustained, the motions were granted, and the bill was dismissed. From that decree this appeal was taken, and it is prosecuted in forma pauperis, under the act of congress approved July 20, 1892.

The opinion of Judge Key dismissing the bill is reported in 53 Fed. 204.

J. C. & Frank L. Wells, for appellants.

Wheeler & McDermott, W. G. M. Thomas, W. L. Eakin, J. H. McLean, and R. P. Woodward, for appellees.

Before TAFT, Circuit Judge, and SEVERENS and SWAN, District Judges.

SWAN, District Judge, (after stating the facts.) 1. This bill makes no charge of fraud against either of the defendants. The wrong of which it complains is alleged to have been perpetrated by Pressley, their uncle, and Whitley, his grantee. The first died as early as 1887, if not before that time, as appears from the bill. Whether or not Whitley was living when this suit was brought is not stated. If the facts pleaded make a case of equitable cognizance, it would seem that Pressley's legal representatives, and Whitley, if living, should be made parties, as it is their fraudulent conduct which is to be investigated. Gaylords v. Kelshaw, 1 Wall. 81; Lewis v. Cocks, 23 Wall. 471; Judson v. Courier Co., 25 Fed. 708.

2. The value of the property in controversy is nowhere alleged in the bill. By section 1 of the act of March 3, 1887, defining the. jurisdiction of the courts of the United States, it is provided that "the circuit courts of the United States shall have original jurisdiction concurrent with the courts of the several states of all suits of a civil nature at common law or in equity where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars * * * in which there shall be a controversy between citizens of different states." The record must show affirmatively that the jurisdictional value is involved, (Parker v. Latey, 12 Wall. 390; Hunt v. Blackburn, 127 U. S. 774, 8 Sup. Ct. 1395;) but, as this omission is apparently remediable in fact, we shall require that the necessary showing on that point be made and filed, and shall dispose of the case as if the record contained the proper allegation of value.

3. In the interpretation of this bill it is scarcely necessary to invoke the rule that the construction of a pleading shall be adopted which is most unfavorable to the party pleading, since every person, it must be assumed, states his case as favorably to himself as possible. From the averment that "the lots were vacant and unoccupied" at the time of Fuller and Pressley's purchase, "and so remained until after the death of the said Simeon Fuller," it is a fair and natural inference that since Fuller's death these lands have been in possession of Whitley and his grantees and their successors. This inference is confirmed by the fact that complainants do not

claim that they are, or ever have been, in possession. Its force and effect are in no degree impaired by the allegation that complainants "are tenants in common with the defendants in and to the premises described," for this averment of title is not of a fact, but of the consequence of facts. Story, Eq. Pl. § 730. The allegation that complainants "have never been actually ousted therefrom, [i. e. the premises in dispute,] nor have been in any way notified of any repudiation or adverse claim or holding," is clearly and studiously limited to the effect of the admitted possession of Whitley and his successors in ownership, and is merely a denial that such possession and occupancy are legally sufficient against the complainants as tenants in common, against whom, in a contest with a cotenant, it is held that an actual ouster must be proved. Barnitz's Lessee v. Casey, 7 Cranch, 456.

When the facts are undisputed, their effect is a question of law. The supreme court of Tennessee, whose decision as a rule of real property is binding upon us in this case, in Weisinger v. Murphy, 2 Head, 174, held that, "if one tenant in common assumes to convey the entire land, his deed will be a color of title, and possession under it for seven years will be adverse to the right and title of the cotenants, and bar their action to the land conveyed. It is an actual ouster and disseisin of the cotenant, which he is bound to notice; and, in order to create this adverse relation, no formal or other notice from the vendee is necessary." Cited and approved in Burns v. Headerick, 85 Tenn. 102, 2 S. W. 259. The fact, therefore, that complainants have never been notified of any repudiation or adverse claim or holding is manifestly immaterial, while from the facts pleaded, the legal conclusion is inevitable that the complainants have been ousted and disseised of the property. The denials that "there has ever been any legal or valid adverse possession whatever to be charged against them, [the complainants,] or any effective repudiation of their holding in tenancy in common, even till this day," are also plainly the statements of conclusions, and not of facts, and are repelled by the facts pleaded. Adverse possession is, where there is no conflict of facts, a legal question, (Bradstreet v. Huntington, 5 Pet. 438;) and a fortiori the denial that "legal or valid adverse possession can be charged against" a litigant is, though verified by his oath, merely the pleader's estimate of the force of the facts on which it is asserted. The alleged want of "effective repudiation" of complainants' holding in tenancy in common has no greater force, and is also open to the inference that there has been a repudiation in fact of the existence of such tenancy. The protestation that complainants have not been guilty of laches or slept upon their rights is in the same category with the allegations just discussed. The pleading must state facts from which the court can infer diligence. A demurrer admits only those matters of fact which are well pleaded. Mere averments of legal conclusions are not admitted by it, unless the facts and circumstances set forth are sufficient to sustain the allegation. Dillon v. Barnard, 21 Wall. 430; Gould v. Railroad Co., 91 U. S. 536.

Discarding from consideration, therefore, these legal conclusions, and accepting the just inferences drawn from the bill, the substance of the facts it alleges is that complainants' ancestor, Simeon Fuller, Jr., became in 1839, by the recorded deed of the commissioners of Chattanooga, a tenant in common with Pressley of the lands in question, and held that interest until his death, in 1846; that in 1844 his cotenant, Pressley, without his consent or knowledge, conveyed the entire tract to one Whitley, and, in concert with him, fraudulently withheld that deed from registration until 1851; that defendants derive title by mesne conveyances from Whitley and his grantees and their successors, who have been in possession, claiming the entire tract, since Fuller's death, in 1846, and are now in possession under such claim; that Pressley's conveyance to Whitley,.and his subsequent withholding of the deed from registration, was a fraud upon Simeon Fuller and his heirs, who were then infants of the ages of from four to seven years, and that this fraud was perpetuated by Pressley's false representations, which dissuaded complainants from inquiring into the facts because they confided in his integrity and relationship; that complainants had no knowledge of the fraud or of their father's interest in the lands until 1887. Complainants have been disseised for 48 years. The question now arises whether a suit in equity for partition can be maintained on the facts stated, either under the system of equity administered in the courts of the United States, or under the laws of the state of Tennessee and the decisions of its supreme court.

The federal system of chancery practice follows that of the high court of chancery of England, and "does not deal with or decide questions of controverted title. Its purpose is to make a division among the parties before the court of real estate in which they had interests or estates that were in controversy as among themselves." Gay v. Parpart, 106 U. S. 689, 1 Sup. Ct. 456; McCall v. Carpenter, 18 How. 302; Rich v. Bray, 37 Fed. 273. This doctrine is in accordance with the great weight of American authorities, where the title is legal, and no ground of equitable jurisdiction appears beyond that of granting partition. Wilkin v. Wilkin, 1 Johns. Ch. 111; Phelps v. Green, 3 Johns. Ch. 302; Coxe v. Smith, 4 Johns. Ch. 271; Clapp v. Bromagham, 9 Cow. 530; Brownell v. Brownell, 19 Wend. 367; Brock v. Eastman, 28 Vt. 658; Thomas v. Garvan, 4 Dev. 223; Walker v. Laflin, 26 Ill. 472; Whitten v. Whitten, 36 N. H. 326; Hoffman v. Beard, 22 Mich. 59; Lambert v. Blumenthal, 26 Mo. 471; Fenton v. Steere, 76 Mich. 405, 43 N. W. 437; Stuart v. Coalter, 4 Rand. (Va.) 74; Martin v. Smith, 1 Harp. 106; Warfield v. Gambrill, 1 Gill. & J. 503; Stevens v. Enders, 13 N. J. Law, 271; Maxwell v. Maxwell, 8 Ired. Eq. 25; Garrett v. White, 3 Ired. Eq. 131; Shearer v. Winston, 33 Miss. 149; Foust v. Moorman, 2 Cart. (Ind.) 17.

The statutes of Tennessee and the decisions of the supreme court of that state are explicit to the same point. By section 3993 of the Code of Tennessee (chapter 2, Of Real Actions) it is provided that "any person having an estate of inheritance, or for life, or for years, in lands and holding and being in possession thereof as tenant in

common or otherwise, with others, is entitled to partition thereof, or sale for partition under the provisions of this chapter." In the construction of this and prior cognate legislation it has been held that a partition cannot be decreed in equity, where there is adverse possession, until complainants' title be established at law. Therefore, a bill filed by one heir of the grantee, alleging that his coheir had sold the land to the defendant who was in possession, and praying partition, was dismissed on demurrer, complainant not having established his title at law. Trayner v. Brooks, 4 Hayw. (Tenn.) 295; Carter v. Taylor, 3 Head. 30. The legal title must be clear of dispute. Bruton v. Rutland, 3 Humph. 435; Hickman v. Cooke, Id. 642, 643. In Nicely v. Boyles, 4 Humph. 177, it is said:

"A bill for partition is not a bill to settle title, but a bill to divide that which belongs to tenants in common or joint tenants, among them in severalty; and, if the title be disputed, partition will not be made until the dispute is settled in an appropriate form of action. A bill of partition is not this."

See, also, Whillock v. Hale, 10 Humph. 65. In Groves. v. Groves, 3 Sneed, 189, 190, the complainants filed a bill for partition. "The defendants," say the court, "claim title to the whole as vendees of the common ancestor, and by virtue of long adverse possession, (17 years.) How far their possession would avail them under the statutes of limitations or raise a presumption of deeds are questions that would properly come up in a court of law in an action of ejectment. The complainants must establish their rights as tenants in common before they can ask partition. This proceeding is not intended to try titles and dispose of questions proper for an action of ejectment, and thus usurp the jurisdiction of a court of law. * * * Whatever right the complainants have must be established in a court of law, and then, if successful, they will be tenants in common and have a right to partition."

It is clear, therefore, that neither under the equitable jurisdiction vested in the federal courts, nor under the statutes of Tennessee nor yet according to the decisions of its court of last resort, have the complainants any standing in a court of equity for a partition. Their bill is purely an ejectment bill, and, unless the defendants are connected with the fraud charged, we may properly apply to it the language of Chief Justice Marshall in Smith v. McIvor, 9 Wheat. 534:

"The facts alleged are all examinable at law, and a court of law is as capable of deciding on them as a court of equity. In such a case the existence of some fact which disables the party having the law in his favor from bringing his case fairly and fully before a court of law has been generally supposed to be indispensable to a court of equity. Some defect of testimony, some disability which a court of law cannot remove, is usually alleged as a motion for coming into a court of equity. But in the case at bar the case alleges nothing which can prevent a court of law from exercising its full judgment. No defect of testimony is alleged; no discovery is required; no appeal is made to the conscience of the defendant. Facts are alleged which have precisely the same operation in a court of law as in a court of equity, and the bill does not even insinuate that they cannot be proved at law."

See, also, Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276.

It is insisted, however, that the fraud of Pressley and Whitley, and its concealment, constitute a claim to relief of which a court of equity alone can take cognizance, so that, in the language of complainants' brief, "aside from the matter of partition, the court has legitimate possession of the case, and can hold it for every purpose, legal questions and all." While the principle referred to as authorizing equitable jurisdiction of incidental matters cognizable at law is well recognized, it has its limitations which exclude this controversy. The first objection to its application here is that Pressley and Whitley, the parties charged with this fraud, are not before the court. It is clear, also, that the aid of this court is sought, not for the purpose of dividing the property, but of acquiring it, since complainants are out of possession, and the defendants in, claiming the entire property adversely; and in these conditions the complainants' proper remedy is at law. Hall v. Law, 102 U. S. 466. Defendants, because of the fraud of others, cannot be deprived of their constitutional right to a trial by jury by a colorable suit for partition. Hipp v. Babin, 19 How. 271. It is well said by Mr. Justice Daniel in Magniac v. Thomson, 15 How. 302:

"Equity may be invoked to aid in the completion of a just but imperfect legal title, or to prevent the successful assertion of an unconscientious and incomplete legal advantage, but to abrogate or assail a perfect and independent legal right it can have no pretension. In all such cases equity must follow, or, in other words, be subordinated to, the law."

Great stress is laid by complainants on the registration of the commissioners' deed to Fuller and Pressley, as depriving defendants of the character of innocent grantees, and tainting their possession with mala fides. To use the language of appellants' brief, the charge is that defendants "participate in the fraud by accepting the benefits of it to the exclusion of complainants as accessories after the fact." This is specious, perhaps, but unsound. It is the only imputation made against the good faith of the defendants, and requires us to determine the sufficiency of the facts to establish fraud on the part of the defendants. Its infirmity is that it is not justified by the parts of the bill descriptive of Pressley's fraudulent conveyance, nor does the purchaser of a once imperfect title, whose defects time has apparently healed, become by such purchase alone in any sense a fraudulent grantee. Indeed, the bill itself, in its effort to exculpate complainants from the charge of laches in bringing suit, states that "he [Pressley] so executed the deed to Whitley as to include apparently the interest of the said Simeon Fuller therein, and as to purport to convey the entire title, without, however, naming or even referring to the said Simeon Fuller's interest." If this tends to excuse complainants' professed ignorance and delay, it equally avails to shield defendants from the charge of buying with knowledge a clouded title. But, if defendants had actual or constructive notice that Fuller was once tenant in common of the lands with Pressley, that knowledge did not legally or equitably preclude them from buying the property, when, by the law of Tennessee, time and adverse possession had not only barred his right of entry and action, but extinguished his title, and transferred it to defendants'

vendors.   Love v. Love's Lessee, 2 Yerg. 290;  McLain v. Ferrell, 1 Swan. 48–54; Norvell v. Gray's Lessee, Id. 96;  Chaney v. Moore, 1 Cold. 50;  Woodward v. Boro, 16 Lea, 678.

Although the statutes of Tennessee make the record of a deed "notice to the world" of the rights of the grantee, such record does not operate to nullify the statute of limitations (section 3459 of the Code of Tennessee,) vesting a claimant who has held seven years' adverse possession of lands, under a conveyance purporting to pass the fee, "with a good and indefeasible title in fee."   When that time has ran against the disseised party, the efficacy of the record of his deed as notice expires with his title, and such adverse occupant is vested with a new estate, which others may rightfully purchase.   So firmly is he intrenched that in York v. Bright, 4 Humph. 312, where a bill in equity filed to restrain an action of ejectment charged that complainant was the equitable owner of the land in controversy, and that defendant fraudulently procured a deed to be made to himself by the holder of the legal title, and the proof showed that defendant had been in possession of the land for 20 years, claiming it as his own by an unregistered deed, the court held:

"The statute of limitations is already a bar to the suit.   The fact that the defendant procured the deed by fraud, if it were so, and fraudulently obtained possession, would make no difference.   The statute makes no exception of fraud, and will run in favor of a possession and title obtained by fraud."

And so is Jackson v. Hodges, 2 Tenn. Ch. 285.

To sustain the charge of fraud against defendants, the facts must place them in such relation to the complainants or the lands as to make their holding in contravention of some equity subsisting between them and the complainants.   The derivation of their title remotely from Pressley and Whitley is not of itself, under the circumstances of this case, sufficient to asperse their good faith or divest their legal rights.   Ringo v. Binns, 10 Pet. 269, 281.

Nor does the concealment of Pressley's fraud by withholding this deed from registration seven years, and the infancy of complainants at the time of its commission, aid their case.   We are not cited to any provisions of the Code of Tennessee prescribing the time within which suit must be commenced when the cause of action has been fraudulently concealed, and we may assume that the general doctrine obtains in that state that, where the party defrauded remains ignorant of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered.   The utmost effect of the concealment of the deed was to preserve the cause of action for such reasonable time after its registration as would enable complainants to ascertain the facts and institute suit for redress.   There is no arbitrary period applicable to all cases within which the defendant party must take action.   The facts in each case must measure the diligence and activity which equity makes the condition of its aid.   This test is also fatal to complainants' case.   Conceding that the disability of infancy condoned their inaction during their minority, and assuming that they were also entitled to the additional period of three

years after majority to bring suit, granted by section 3451 of the Code of Tennessee to those under disability when the cause of action accrued, their laches are inexcusable. The eldest complainant became of age in 1860, and the youngest in 1863. In the 30 years which have since elapsed, complainants have been supine and dormant, though the adverse possession of others was itself notice that they held the land under a title, the character of which they were bound to ascertain. Lea v. Copper Co., 21 How. 493--498; Landes v. Brant, 10 How. 348, 375. They knew that their father once had an interest in lands in and about Chattanooga, yet in all that time made no inquiry or investigation, but rested content with their uncle's assurance that it had been conveyed to him. During all this time the defendants and their predecessors in ownership have been encouraged by lapse of time and the silence of complainants to invest their means in the purchase and improvement of the land and the payment of taxes thereon, in ignorance of any defect of title not remedied by time and their possession. Now that the capital and enterprise of others has made valuable their abandoned inheritance, complainants ask the aid of a court of equity to wrest it from its possessors. Upon their own confession, they have remained inactive and acquiescent for five years after they had discovered the fraud, and then sought their remedy, not against the wrongdoers or their estates, but against those whom their negligence and delay has misled and lulled into security. Neither poverty, absence from the state, nor ignorance can palliate such laches or justify relief. Bowman v. Wathen, 1 How. 189, 195; Wood v. Carpenter, 101 U. S. 135, 139; Norris v. Haggin, 136 U. S. 386, 10 Sup. Ct. 942.

In the consideration of the questions presented by appellants we have necessarily reviewed the facts, and while our decree might be rested on the ground that complainants have mistaken their remedy, in justice to defendants, who are entitled to have this stale claim forever quieted, we also hold that there is no equity in the case made by the bill, and affirm, with costs, the decree of the circuit court dismissing it.

Decree affirmed.

TAFT, Circuit Judge, and SEVERENS, District Judge, agree with the foregoing opinion in so far as it is based on the ground of laches.