# CASES

## ARGUED AND DETERMINED

### IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

HEINZE et al. v. BUTTE & BOSTON CONSOLIDATED MIN. CO. et al.

(Circuit Court of Appeals, Ninth Circuit. November 2, 1903.)

No. 852.

1. PARTITION—POSSESSION TO SUPPORT SUIT—MONTANA STATUTE.

To support a suit for partition under Code Civ. Proc. Mont. § 1340, which authorizes such suit by co-tenants "who hold and are in possession of real property as joint tenants or tenants in common," actual physical possession is not essential, and need not be alleged, but such possession as the law imputes to the holder of the legal title is sufficient.

2. SAME—TITLE OF COMPLAINANT—DENIAL BY DEFENDANTS.

The bare denial of complainant's title, on information and belief, by defendants in a suit for partition, who do not allege adverse title in themselves, does not put such title in issue, so as to require the court to stay the suit until it shall be established at law.

3. SAME—CROSS-BILL SETTING UP EQUITABLE TITLE—PROCEDURE.

Where an intervener in a partition suit files a cross-bill setting up an equitable title to the interest claimed by complainant, and prays that certain deeds be canceled on the ground of the insanity of the grantor and of fraud, and that he be decreed to be the owner of such interest, there is no occasion for the court to stay the partition suit, but it may properly proceed and try all the issues raised at the same time, the effect necessarily being to defer any action as to partition until the issues raised by the cross-bill have been determined; and especially is such procedure appropriate where the cross-bill contains all the essentials of an original bill for affirmative relief, and in effect prays for partition.

4. SAME—POWER TO APPOINT RECEIVER.

In a suit for partition of mining property, in which the ownership of one of the interests is in dispute, the court has power to appoint a receiver for the share of the ore being mined by the co-tenants in possession, pertaining to such interest, where necessary to protect the rights of all the parties.

5. SAME—RECEIVERS—POWER TO DIRECT OPERATION OF MINES.

Pending a suit in a federal court to partition mining property, defendants, whose interests were undisputed, were in possession and operating the mine. The title to the interest claimed by complainant being in dispute, the court appointed a receiver to receive and hold the share of the ore mined pertaining to such interest. Subsequently, on application of

---

¶ 1. See Partition, vol. 38, Cent. Dig. §§ 60, 63.

126 F.—1

complainant, alleging that defendants were so operating the mine as to fraudulently prevent the receiver from obtaining his share of the ore, and after a full hearing, the court extended the receivership to the entire property, and directed the receiver to operate the mine and deliver to defendants their share of the ores extracted. On such hearing, defendants relied on an order made by a state court in a suit brought therein appointing a receiver for their interests, with directions to operate the mines; and there was evidence tending to show that such suit was collusive, and the appointment of the receiver obtained for the purpose of ousting the federal court of jurisdiction to extend its own receivership over defendants' interests. *Held*, that in view of such evidence, and the fact that other evidence produced on the hearing was not in the record, an appellate court could not say that the trial court exceeded its power or abused its discretion in so extending its receivership, or in directing its receiver to operate the mines, especially as the proceedings in the state court and other evidence tended to show that defendants recognized the propriety of such action, and they also accepted their share of the ore mined by the receiver.

6. APPEAL—REVIEW OF FINDINGS OF FACT.
   Findings of fact made by the trial court will not be disturbed unless the appellate court can clearly see that they are opposed to the weight of the evidence, or unless some error is clearly shown.

7. PARTITION—ISSUES INVOLVING QUESTIONS OF TITLE—DUTY TO STAY SUIT.
   A partition suit is not an appropriate proceeding in which to try controverted questions of title between the parties, except in state courts, which are authorized by statute to try legal and equitable issues in the same action; and where, in such a suit in a federal court, an issue is raised by the pleadings as to complainant's title, involving a question of fact—as the sanity or insanity of a grantor—it is the duty of the court, on motion, to stay the suit until such issue has been determined in an action at law, where either party may exercise his constitutional right to demand a jury trial. Per Ross, Circuit Judge, dissenting.

8. MINES—RECEIVERS—AUTHORITY TO DIRECT OPERATION OF MINE.
   It is only in rare cases, and upon the strongest showing of necessity, that a court is authorized to appoint a receiver for mining property, with authority to operate the same and extract the ore therefrom. Per Ross, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the District of Montana.

James M. Denny, John J. McHatton, and John W. Cotter, for appellants.

H. J. Burleigh, for the receiver.

John F. Forbis and L. O. Evans, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. The questions presented for consideration on this appeal are: First, whether the amended bill for partition was defective, for the reason that it contained no allegation that the appellee the Butte & Boston Consolidated Mining Company was in possession of the premises sought to be partitioned; second, whether the decree should be reversed for the reason that the trial court proceeded to a trial of the issues presented on the cross-bill of the appellants after it was disclosed that the title of the complainant in the amended bill was in dispute; third, whether the court erred in appointing a receiver over the disputed interests, and subsequently in extending such receivership over the whole of the property sought

to be partitioned, and in directing the receiver to operate and mine the same; fourth, whether the court erred in its findings of fact upon the issues presented by the cross-bill.

The Montana statute gives the remedy of partition to co-tenants "who hold and are in possession of real property as joint tenants or tenants in common," etc. Code Civ. Proc. § 1340. We think that the possession which the law imputes to the holder of the legal title is sufficient to maintain partition, under this statute. The statute is said to have been taken from section 1535 of the Code of Civil Procedure of New York. In construing that section in Bender et al. v. Terwilliger et al. (Sup.) 63 N. Y. Supp. 270, subsequently affirmed by the Court of Appeals in 166 N. Y. 590, 59 N. E. 1118, the court said, "The possession therein referred to does not mean an actual physical possession, but that possession which follows the title." In Wainman v. Hampton, 110 N. Y. 429, 433, 18 N. E. 234, 235, the court said, "A constructive possession such as the law draws to the title is sufficient for the maintenance of the action." In Weston v. Stoddard, 137 N. Y. 119, 128, 33 N. E. 62, 65, 20 L. R. A. 624, 33 Am. St. Rep. 697, the court said, "What is here meant is not a strict pedis possessio, but a present right to the possession."

The complainant alleged in its amended bill that it owned in fee simple an undivided one-half of the Snohomish claim; and an undivided two-thirds of the Tramway claim. It alleged that the defendants in the bill owned the remaining interests in both claims as its co-tenants. The answer to the amended bill which was filed by Daniel W. Connole, Catherine Sullivan, and Patrick N. Sullivan, and the answer which was filed by John McNamara, Bridget McNamara, and Joseph Connole, denied, on information and belief, "that the complainant is now or ever was the owner in fee simple or otherwise of an undivided one-half interest, or any interest, in the Snohomish lode claim, or of an undivided two-thirds interest, or any interest, in the Tramway lode claim." These answers were filed respectively on December 1, 1897, and December 30, 1897. On March 21, 1898, F. Augustus Heinze, having obtained leave to intervene, filed a cross-bill, alleging that on October 16, 1897, he had purchased from Daniel W. Connole, Catherine Sullivan, and Patrick N. Sullivan, her husband, John McNamara, Bridget McNamara, his wife, and Joseph Connole, their undivided one-half interest in the Snohomish claim, and their undivided one-third interest in the Tramway claim. The sole object and purpose of his cross-bill was to set forth his interest in the property which was sought to be partitioned, and to obtain a decree protecting his right therein, and distributing to him his proportion of the proceeds of the same in case of a sale. The cross-bill also denied, upon information and belief, the title of the complainant in the bill. In none of the pleadings so far filed in the case was any defect or infirmity in the complainant's title alleged, nor was it asserted that any of the parties had adverse claims against the alleged title of the complainant, or adverse possession of the property sought to be partitioned. All the information that was conveyed by the pleadings at that date was that the complainant

alleged a title in fee simple, and that the defendants and the intervener all denied, on information and belief, that the complainant' was the owner of the interest which it asserted in its bill. In other words, by their answer they said to the court, "We own an undivided one-half of one claim, and an undivided one-third of the other, but we deny, on information and belief, that the complainant owns the other interests." While the pleadings were in that condition, on April 30, 1898, Heinze, the intervener, and the defendants who had answered, moved for an order directing a stay of proceedings until the complainant should establish its right in an action at law. This motion, in view of the state of the pleadings, was denied. It was not again renewed, nor was the court at any subsequent stage of the proceedings requested to stay the action of partition.

The motion was properly denied. No issue had been raised as to the complainant's title or possession. The equity doctrine is well expressed by Chancellor Williamson in Lucas v. King, 10 N. J. Eq. 277, where he said:

"I do not understand, however, that the bare denial of the complainant's title is any obstacle to the court's proceeding. The defendant must answer the bill; and if he sets up a title adverse to the complainant, or disputes the complainant's title, he must discover his own title, or show wherein the complainant's title is defective. If, when the titles are spread before the court, upon the pleadings, the court can see that there is no valid legal objection to the complainant's title, there is no reason why the court should not proceed to order the partition."

In Jenkins v. Van Schaack, 3 Paige, 242, the court said:

"If there had been an actual ouster of the complainant by his co-tenant, or if the land was held adversely, it might be necessary to regain the actual seisin by ejectment before a suit for partition of the premises could be sustained either at law or in equity."

In Appeal of Wistar, 115 Pa. 241, 8 Atl. 797, the court said:

"The defendants must point out some defect in the petition, or aver their own title or adverse possession, to justify the court to refuse to proceed in the partition."

Of similar import are Overton's Heirs v. Woodfolk, 6 Dana, 374; Appeal of Welch, 126 Pa. 297, 17 Atl. 623; Hooper v. De Vries, 115 Mich. 231, 73 N. W. 132. The reason of the rule applies with added force to a case such as this, where the answering defendants made no adverse claim as against the interest asserted by the complainant.

On July 20, 1898, some three months after the motions to stay the suit were interposed, James Larkin, by his guardian ad litem, intervened and filed his answer to the amended bill, and filed his cross-bill thereto. In the answer it was alleged that Larkin was insane, and had been insane for five years. The answer denied, on information and belief, that the complainant owned the interest which it claimed to own in the two mining claims, and alleged, on information and belief, that the said James Larkin was at the time of the commencement of the suit, and still was, the owner thereof. The answer contained no allegation, however, that the complainant claimed title through James Larkin, or as his grantee. The prayer

of the answer was that the suit be stayed, that the complainant take nothing thereby, and that the same be dismissed. James Larkin died on August 4, 1898, and on October 31, 1898, F. Augustus Heinze, administrator of his estate, and Clara A. Larkin, his only child and heir at law, by leave of the court filed their answer and their cross-bill to take the place of the answer and the cross-bill filed on behalf of James Larkin by his guardian ad litem. In their answer they denied, upon information and belief, that the complainant is or ever was the owner of an undivided one-half of the Snohomish claim, or of an undivided two-thirds of the Tramway claim; and, upon information and belief, they alleged that while James Larkin was insane, and laboring under such mental derangement as to render him incompetent to make any contract or conveyance of his property, the complainant's grantor, by fraud, duress, and undue influence, induced him to sign the deed under which the complainant claims to have acquired an interest in said property, and that the said Heinze, as administrator of James Larkin's estate, and the said Clara A. Larkin, were and are entitled to the possession of the same. The prayer of the answer was that the complainant take nothing by the action, and that it be decreed that it has no right, title, or interest in said claims, and that the interests which it claims therein belong to the estate of James Larkin, deceased, and that said Heinze, as administrator, is entitled to the possession thereof. Their cross-bill alleged substantially as it was alleged in James Larkin's cross-bill, viz., that during the year 1893 James Larkin, deceased, was the owner of the interests in the Snohomish and Tramway lode claims which are claimed by the complainant in this suit; that he was insane and was mentally incompetent to manage his property; that the complainant's grantor contrived to unjustly deprive him thereof, and induced him to sign and deliver a deed thereto for a very inadequate and unjust consideration; that the deed ought to be canceled by a decree of the court, and the legal title to said property reinvested in the estate of said James Larkin and his heir at law. The cross bill alleged, further, that the complainants therein are entitled to have the complainant in the partition suit declared a trustee of such title for them, and that they are entitled to a decree of the court requiring the complainant to convey its right, title, and interest to them—the said F. Augustus Heinze, administrator, and the said Clara A. Larkin. The prayer of the said cross-bill was that "the cross-bill be heard at the same time as the complainant's amended bill of complaint herein, and that one decree be entered, adjudging and determining your orator's rights, as well as those of all other parties herein; that said deeds of conveyance heretofore mentioned, and all of them, be declared null and void in so far as they relate to or affect the said Snohomish and Tramway lode claims; and that the same, and the record thereof in that respect, be by order of this court canceled"; and that the complainant be declared to be a trustee of the legal title to said interests in such property for the complainants therein, and be decreed to convey to them the said title, and all rights, claims, and interests therein.

It will be observed that neither in their answer nor in their cross-bill do the appellants allege an adverse possession of the premises in controversy, or of the interests claimed by the appellee corporation. By filing their cross-bill the appellants made their election to try the question of title in equity. Without making an application to the court to stay the suit in order to require the corporation appellee to try its title by an action at law, they went into equity and filed their cross-bill, which is in effect an original suit, praying the court to set aside the deed under which the corporation appellee claims, and to have that corporation declared to be a trustee for them of the legal title. They based their claim to equitable relief not only on the ground that the grantor of the corporation appellee was insane at the time when the deed was made, but on the further ground that he had been overreached and induced to part with his title for a grossly inadequate consideration. Only the first of these grounds could have been tried in a legal action. They could all be united in a suit in equity. The appellants having deliberately chosen to resort to equity, and the appellees having waived any objection they might have interposed to that proceeding, no reason is perceived why the trial court could not proceed to a determination of the issues so raised. Said the court in Read v. Huff, 40 N. J. Eq. 233:

"Where a defendant in a partition suit in chancery sets up an equitable title to the entire estate in the premises, or impeaches the complainant's title on equitable grounds, there is no need to suspend the partition suit until the title shall be settled."

Although there was no further application for a stay, and no order was made staying the partition suit pending the trial of the matters presented on the cross-bill, that suit was in fact stayed, and necessarily so, until all the issues raised upon the cross-bill were adjudicated. What ground is there, for holding that the decree should now be set aside? At what point in the proceedings did the court err?

There is another view of the case on which the decree may be sustained, which is this: The cross-bill was in the nature of an original bill to remove a cloud from the appellants' alleged title, to declare a trust, and to set aside a conveyance. It contained all the necessary averments of an original bill seeking affirmative relief. It presented a case of equitable jurisdiction. It would have sustained a decree if the complainant's bill had been dismissed. It was before the court for disposition as an original suit. Waring v. Smyth, 2 Barb. Ch. 128, 47 Am. Dec. 299; Holgate v. Eaton, 116 U. S. 33, 6 Sup. Ct. 224, 29 L. Ed. 538; Chicago & A. R. R. v. Union Rolling Mill Co., 109 U. S. 702, 3 Sup. Ct. 594, 27 L. Ed. 1081; Lowenstein v. Glidewell, 5 Dill. 329, Fed. Cas. No. 8,575; Markell v. Kasson (C. C.) 31 Fed. 104. The prayer of the cross-bill was that the cross-bill be heard at the same time as the complainant's amended bill of complaint, and "that one decree be entered, adjudging and determining your orators' rights, as well as those of all other parties herein." That prayer is, in substance, a

prayer for partition. After the court had determined the questions raised by the cross-bill upon the issues tendered by the appellants, there was no obstacle to its further proceeding to partition the property. In Freeman on Co-Tenancy & Partition, § 499, it is said:

"Hence, when a suit is rightfully in equity, and from the adjudication there made it appears that the parties are co-owners and entitled to partition, a decree for such partition may be made, irrespective of the question whether the complainant is seised or disseised."

In 21 Enc. of Law (2d Ed.) 1149, it is said:

"So, if the plaintiff's disputed title is an equitable one, or partly equitable and partly legal, a court of equity may determine the titles of the respective parties, and decree partition in accordance therewith."

This doctrine is well sustained by the decisions. Scott v. Guernsey, 60 Barb. 178; Dameron v. Jameson, 71 Mo. 97; Lucas v. King, 10 N. J. Eq. 277; Obert v. Obert, Id. 102; Hopkins v. Grimshaw, 165 U. S. 342, 358, 17 Sup. Ct. 401, 41 L. Ed. 739.

It remains to be considered whether on this appeal it should be held that the order appointing a receiver, and the order subsequently extending the receivership, must be reversed, for the reason that they exceeded the powers of the trial court.

On January 20, 1899, F. Augustus Heinze conveyed to Arthur P. Heinze an undivided one-half of the interests which he had acquired from Daniel W. Connole and others on October 16, 1897. On July 13, 1899, a receiver was appointed of the interests in the mines which were in dispute. He was authorized to receive from the mining co-tenants in possession one-half of the ores produced from the Snohomish claim, and two-thirds of the ores from the Tramway. He was also authorized to carry on mining operations in both claims in such portions thereof as were not in the actual occupation of the mining co-tenants. As a matter of fact, the receiver under this order never undertook any mining operations, but received only the proportion of the output of the mines belonging to the interest therein which was in dispute, and the order is here to be considered as if that feature of it had not been included. It is one of the powers of a court of equity in a partition suit to appoint a receiver to receive rents or otherwise protect the interests of co-tenants. In Beach on Receivers (2d Ed.) § 497, it is said:

"Whenever it appears during the progress of a suit in partition between tenants in common or joint tenants that a receiver is necessary to protect the interests of all the parties, the court will, upon proper application, appoint a receiver of the property."

In Holmes v. Bell, 2 Beav. 298, Lord Langdale, the Master of the Rolls, said:

"But in this case the defendants are tenants in common, and the one who is before the court is in possession of the whole rents; and, under the circumstances, I think that a receiver of the whole rents ought to be appointed."

In Duncan v. Campau, 15 Mich. 415, Judge Campbell said:

"It comes, then, to the simple inquiry whether a receiver can be appointed over tenants in common. I think the precedents permit this in some cases."

In Ames et al. v. Ames et al., 148 Ill. 321, 340, 36 N. E. 110, 115, the court said:

"The appointment of a receiver in a partition proceeding is not of frequent occurrence. But pending litigation we think the law is well settled that the court has ample power, upon proper showing, to make the appointment."

In Gooddale v. 15th District Court, 56 Cal. 26, the court, after citing numerous cases of English and American authority, sustained the doctrine that it was competent for the court in a partition suit in some cases to grant a receiver. It is to be borne in mind that the appointment in this case did not extend to the whole property, but only to the interests that were in dispute. The possession, and the mining operations of the co-tenants in possession of the mine, were in no way disturbed or hampered. The order simply directed the receiver to receive and hold the ores belonging to the disputed interests in his hands until, by the decision of the court on the case made by the cross-bill, it should be determined to whom they belonged. In making such an order, it is clear, upon the authorities, that the court did not exceed its powers, or abuse the discretion which was vested in it.

On February 26, 1900, the appellee filed its written application for an extension of the receivership to the whole of the said Tramway and Snohomish lode claims, and in support thereof filed the affidavit of its manager, stating, in substance, that since the appointment of the receiver the mining operations had been so conducted by said F. Augustus Heinze and Arthur P. Heinze as to render it impossible for the receiver to receive the shares of the ores of the mines to which he was entitled under the order appointing him such receiver, and alleging fraudulent acts and practices of the said Heinzes in operating the extraction of ores from said mines; stating that they had, by their employés, clandestinely removed from the mines large quantities of first-class ore by covering the tops of the cars containing the same with waste and dirt, and hoisting the same to the surface, pretending that it was waste, thereby deceiving said receiver and his employés; that, in order to watch the mining operations of said mining co-tenants, and to obtain any reasonable proportion of the ores to which he was entitled, the receiver had been compelled to employ a large number of inspectors, at an expense of about $2,000 per month. The affidavit further set forth the means adopted by said mining co-tenants to defraud the receiver. Upon that affidavit a hearing was had, and on March 15, 1900, an order was made extending the receivership to the whole of said mines, and authorizing the receiver to operate and mine the same, and to deliver to the said mining co-tenants, F. Augustus Heinze and Arthur P. Heinze, their proportion of the ores extracted by the receiver. From an affidavit filed in behalf of the corporation appellee, suggesting a diminution of the record, it appears that a large portion of the evidence taken before the court on the hearing which was had on the application to extend the receivership, and which occupied the time of the court from March 7 to March 15, 1900, was oral testimony, not reduced to writing, and affidavits and exhibits now missing from

the files of the court. It is stated in the affidavit, and it is not contradicted in the counter affidavit of the appellants, that among such exhibits was a certified copy of the complaint, petition for the appointment of a receiver, and order appointing a receiver in a suit for partition brought in the District Court of Montana for Silver Bow county by Clara A. Larkin and Burdette O'Connor, to whom it was alleged Clara A. Larkin had deeded an interest, as plaintiffs, against F. A. Heinze and Arthur P. Heinze and the Butte & Boston Consolidated Mining Company, from which it appeared that on March 3, 1900, said district court for Silver Bow county appointed E. H. Wilson receiver over the interests of said F. Augustus Heinze and Arthur P. Heinze, with instructions to operate the said mining property. The affidavit stated, and it is not denied, that said exhibits formed part of the record upon which the Circuit Court acted in making its order extending the receivership. It is not disputed that the petition upon which the state court appointed the receiver alleged distinctly that it was for the best interests of all concerned in said properties that the same should be continued to be operated and mined. It is claimed on behalf of the corporation appellee that there was sufficient in that record to show to the Circuit Court that the suit in the state court, and the appointment of a receiver therein, was collusive between the said Heinzes and Clara A. Larkin, and was instituted and assented to by said parties for the purpose of divesting the Circuit Court of jurisdiction to extend the receivership. It appears, also, that, at the time of the hearing of the application in the court below to extend the receivership, F. Augustus Heinze asserted that he and the said Arthur P. Heinze had been, and at said time were, in the possession of said mining claims, and engaged in mining the same, and that they claimed such right under the provisions of an act of the Legislative Assembly of Montana entitled "An act to amend section 592 of the Code of Civil Procedure of Montana," which provided:

"If any person shall assume and exercise exclusive ownership over, or take away, destroy, lessen in value, or otherwise injure or abuse any property held in joint tenancy or tenancy in common, the party aggrieved shall have his action for the injury in the same manner as he would have if such joint tenancy or tenancy in common did not exist: provided, that nothing herein contained shall prevent one co-tenant or joint tenant, or any number of co-tenants or joint tenants acting together less than all, from entering on the common property at any point or points not then in the actual occupancy of the non-joining co-tenants or joint tenants and enjoying all rights of occupancy of the property, without waste; and in the case of mining property, from mining the same in a minerlike manner, and extracting, milling, and disposing of the ore from the common property, paying its or their own expenses, and subject to accounting to the non-joining co-tenant or joint tenant for the net profits of such mining operations, if any made." Laws 1899, p. 134.

The remainder of the statute is not material to the questions here involved. Under this act of the Legislature, which by all the parties to the suit appears to have been conceded to be valid and in full force and effect, the Heinzes contended that they could not be enjoined from mining or operating the mining property. It is true that in February, 1901, the Supreme Court of Montana declared the act

unconstitutional, but it is nevertheless true that the act was relied upon by the Heinzes as affording them immunity from injunction, and was cited to show that the Circuit Court had no power to enjoin them from mining operations pending the suit. All these matters were before the court on the hearing of the application for the extension of the receivership, together with other matters that are not before us on the record. If it were true that the methods of the mining operations of the tenants in possession were such that the receiver was defrauded of his just share of the ores, and that he was powerless to protect himself against such fraud and deceit, and that the appellants relied upon the action of the state court in the suit brought by Clara A. Larkin and Burdette O'Connor to appoint a receiver therein, with instructions to operate the mining property, the purpose of which receivership in said state court was to divest the Circuit Court of all jurisdiction over the mining operations of the mines, and that they also denied the power of the court to enjoin the mining operations of the appellants under the state law, we think a case may have been made, under which, in the exercise of sound discretion, the court was authorized to extend the receivership, and to include therein an order directing the operations of the mines, and that the appellants, by reason of their acts and their attitude taken at the time, cannot now assert that the court exceeded its powers in so doing. It may have been true, also, as was argued by counsel for the corporation appellee, that the controlling consideration which induced the court to direct the receiver to operate the mines was the anxiety of the appellants that the mining operations should not be interrupted. If it be true that such was the attitude of the appellants, and that they had assented to the appointment of a receiver by the state court, and to an order in which that court took their interests in the property under its receivership, and directed that mining operations therein continue, they must be held to have admitted by their conduct that the situation was such as to justify the order of the trial court herein, so far as the operation of the mines was concerned. In Waterworks Company v. Barrett, 103 U. S. 516, 26 L. Ed. 523, the court said:

"The record shows that the appointment of the receiver was made by consent of parties, the attorneys of appellants being in court at the time. However other parties may complain of this act—and there were other parties, none of whom have appealed—the present appellants are bound by their consent in this court, as well as in the court below, and cannot be heard to object to what they then agreed to."

The appellants, although they moved to vacate the receivership, never applied to the lower court to direct the receiver to cease his mining operations. The only application of that nature that was ever made was presented to this court in September, 1902, after the cause had been brought here on appeal. This court allowed the application, and directed that the mining operations cease, but made no order setting aside the extension of the receivership. During the period between the time when the receivership was so extended, March 15, 1900, and the time when the order of this court was

made, in September, 1902, the appellants regularly received each month from the receiver their proportion of the output of the mines so operated by him. There is authority for holding that such acceptance from the receiver of the product of the receivership should estop the appellants from questioning the validity of the order under which the receiver acted. Said the Supreme Court of Missouri in Greely v. Providence Savings Bank et al., 15 S. W. 429, 431:

"The exceptor, having accepted the dividends from time to time from the hands of the receiver, and having thus recognized the validity of his appointment during all that time, cannot now change front and deny the validity of that appointment. He is clearly estopped from so doing." Citing Bigelow on Estoppel (5th Ed.) § 687.

An appellate court will not reverse the order of a lower court in appointing a receiver or in directing his action, unless it appears that the discretionary power of the court "has been so improvidently and improperly exercised as to bring its action clearly within the meaning of the term 'abuse of power.'" Beach on Receivers, § 118; Sanders v. Slaughter, 89 Ga. 34, 14 S. E. 903; Nimocks v. Shingle Co., 110 N. C. 230, 14 S. E. 684; Beaumont v. Beaumont, 166 Pa. 615, 31 Atl. 336; Fluker v. City Railway Co., 48 Kan. 580, 30 Pac. 20. In the case last cited the court said:

"Unless a very strong showing is made, or this court is satisfied that the discretionary power has not been properly exercised, the conclusion below will not be disturbed."

We adhere to the views expressed by this court in Tornanses v. Melsing, 106 Fed. 775, 45 C. C. A. 615, that the ore in a mine is of the very substance of the estate, and that its extraction by a receiver is not to be permitted, except upon convincing proof of the necessity of such mining operations. What we hold in this case is that, the record does not show that under all the circumstances and the evidence which was presented to the trial court, that court so abused its discretion as to entitle the appellants to a reversal of its orders, especially in view of the fact that the appellants have regularly accepted and received, and still retain, their proportion of the product of the mine while so operated by the receiver.

We have carefully inspected the evidence presented in the voluminous record which is before us on the question of the sanity of James Larkin, and the other issues of fact raised upon the cross-bill, and find no ground to disturb the findings of fact made by the court below. The findings of fact of the trial court will not be disturbed unless the appellate court can clearly see that they are opposed to the weight of the evidence, or unless some error is clearly shown. Lilienthal v. McCormick, 117 Fed. 89, 54 C. C. A. 475, and cases there cited.

The decree of the Circuit Court will be affirmed.

ROSS, Circuit Judge (dissenting). The amended bill in this suit was filed October 6, 1897, by the Butte & Boston Consolidated Mining Company (appellee here) against John F. Forbis, as executor of the last will and testament of William J. McNamara, deceased, John

McNamara, and Bridget McNamara, his wife, Daniel W. Connole,. Catherine Sullivan, and Patrick Sullivan, her husband, Joseph Connole, Joseph A. Lewis, Edmond B. Smith, the Old Colony Trust Company, a corporation, and the Butte, Anaconda & Pacific Railway Company, a corporation. After alleging the citizenship of the respective parties, the bill avers that the complainant is the owner in fee of an undivided one-half interest in the Snohomish lode mining claim, and of an undivided two-thirds interest in the Tramway lode mining claim, both situated in Silver Bow county, Mont., and that the remaining undivided interest therein was at the time of his death, on the 19th day of July, 1890, owned by William J. McNamara; that William J. McNamara was at the time of his death a resident of Silver Bow county, Mont., and that on the 8th of August, 1896, his last will and testament was regularly admitted to probate in the district court of the Second Judicial District of that state,. in and for the county of Silver Bow, in which will the defendant John F. Forbis was named as executor, and the defendants John McNamara, Daniel W. Connole, Catherine Sullivan, and Joseph Connole were named as the devisees, in equal shares, of all of the property of the decedent; that thereafter, to wit, August 10, 1896, Forbis qualified as such executor, and has ever since acted in that capacity; that the defendant Lewis has, or is reputed to have, some interest in the portions of the mining claims mentioned belonging to the estate of William J. McNamara, deceased, but which interest does not appear of record, and the nature and extent of which is to the complainant unknown; that the defendant Old Colony Trust Company holds an interest and mortgage lien upon the undivided interest of the complainant in the claims in question, which mortgage bears date May 3, 1897, and was given by the complainant to that company to secure an indebtedness of $1,500,000, and covers all of the property belonging to the complainant; that the defendant Smith is the assignee of a lease of the mining claims in question, which was executed on or about the 1st day of March, 1897, to Edward E. Lynch, E. H. Wilson, H. C. Carney, John Gilley, and the Excelsior Leasing Company, a corporation, which lease, by its terms, extended to January 1, 1898; that the alleged ownership of the complainant and the defendants in the property is subject to the right of the Montana Railway Company and its successors to a right of way 100 feet in width across the claims, conveyed by deed executed by James Larkin and William J. McNamara on the 26th of December, 1883, and recorded in the records of the county where the property is situated, and subject also to the right of the Montana Central Railway Company to a right of way 100 feet in width across the property, conveyed by deed executed by Larkin and William J. McNamara on the 23d of August, 1887, and similarly recorded, and subject also to whatever rights the defendant Butte, Anaconda & Pacific Railway Company may have to any right of way across the claims by reason of certain condemnation proceedings begun in the district court of the Second Judicial District of the state of Montana, in and for the county of Silver Bow, on March 24, 1894, or otherwise, the nature

and extent of which rights are to the complainant unknown. The only other averments of the amended bill are to the effect that the value of the mining claims therein referred to exceeds the sum of $5,000, and that the value of each of them consists almost entirely in the ores underlying and appertaining to them, and that the premises cannot be partitioned without greatly impairing their value and causing great loss to the owners thereof, and that a sale of the whole of the property is necessary to fairly and evenly apportion the value of the same among the owners. The prayer is, in substance, that the interest of each of the parties may be determined and protected by the court; that the property described may be partitioned, or, if the court shall find, in accordance with the allegations of the bill, that the partition thereof will be prejudicial to the parties thereto, that the same be sold, and the proceeds be applied to the payment of the costs of the proceedings, the discharge of the liens against the property in the order of their priority, and that the residue be divided among the owners according to their respective interests.

The defendants Daniel W. Connole, Catherine Sullivan, and Patrick N. Sullivan answered the amended bill, in which answer they admit that William J. McNamara was the owner of an undivided one-half of the Snohomish and an undivided one-third of the Tramway claim at the time of his death, but deny that the complainant at that time or at any other time was an owner of any part thereof with William J. McNamara, or that the complainant was ever the owner of any interest in either of said claims. They admit that Forbis was duly appointed executor of the last will and testament of the deceased, McNamara, and allege that prior to the commencement of the suit the district court of the Second Judicial District of Montana, on the petition of the said Forbis, made an order directing him to deliver the possession of the undivided one-half of the Snohomish claim and the undivided one-third of the Tramway claim to the devisees mentioned in the will of William J. McNamara, deceased, and that such delivery was made to them, and that they were in full and absolute possession and right of possession thereof at the time of the commencement of the suit, and that the said executor had no right, title, or interest, or possession therein or thereto. They allege that the devisees of William J. McNamara, deceased, sold and by deed conveyed said undivided one-half interest in the Snohomish and the said one-third interest in the Tramway claims to F. Augustus Heinze, and that on or about October 16, 1897, Heinze executed to the defendant Daniel W. Connole a mortgage upon those interests, which is still outstanding. They deny that Lynch, Wilson, Carney, Gilley, or the Excelsior Leasing Company ever obtained a lease on the Snohomish claim, or that the defendant Smith is the assignee of any such lease. They admit the right of way over their interest in the property on the part of the defendant Butte, Anaconda & Pacific Railway Company. They admit that the claims are chiefly valuable for the ores contained in them, and exceed in value the sum of $5,000, but deny that the complainant has any right to have the same partitioned or sold, and pray that the

suit be dismissed. The defendants John McNamara, Bridget Mc-Namara, and Joseph Connole answered in substance as did the defendants last named. The defendant Lewis answered the amended bill, stating that at the time of the commencement of the suit he was interested in the premises, but that his interest had been terminated. The defendant Butte, Anaconda & Pacific Railway Company answered, setting up its claim of right of way over the property in controversy. The defendant Old Colony Trust Company answered, setting forth that it had a lien by mortgage executed May 3, 1897, upon the interest of the complainant. General replications were filed to each of these answers.

On the 19th of July, 1898, the court appointed Richard K. Watson guardian ad litem and prochein ami for James Larkin, then an insane person, and allowing Larkin to intervene in the cause, and to file an answer and cross-bill therein, and authorizing Watson to appear for him in that respect. Larkin, by his guardian, thereafter intervened in the cause, and filed an answer and cross-bill. The substance of these pleadings is that Larkin was the owner of an undivided one-half of the Snohomish and an undivided two-thirds of the Tramway claims; that on the 4th day of May, 1893, the Butte & Boston Mining Company, the predecessor in interest of the complainant, by means of fraud, deception, and undue influence, and without the payment of a sufficient consideration therefor, obtained a deed of conveyance of his (Larkin's) interest; that Larkin was at that time insane; that the Butte & Boston Mining Company afterwards became insolvent, and the defendant Forbis was appointed receiver of its property, and was thereafter authorized to sell it; that there was a committee appointed for the purpose of reorganizing the company, of which E. Rollins Morse was appointed chairman, and that in pursuance of those proceedings the complainant corporation was organized for the purpose of succeeding to the ownership of the property held by the Butte & Boston Mining Company, and to continue in the ownership of the same property; that the receiver of the property of the Butte & Boston Mining Company sold all of it to Morse, as chairman of such committee, who afterwards transferred the same to the complainant; and that such receiver undertook to sell, and did include in the conveyance to Morse, the interests of Larkin in the mining claims in question. The prayer was that Larkin be adjudged to be the owner of those interests, that the mortgage of the Old Colony Trust Company be declared to create no lien thereon, and that the same be reconveyed to him. In his answer, Larkin also asked that the suit be stayed. To the answer of Larkin the complainant filed a replication, and to his cross-bill it filed an answer, as did the Old Colony Trust Company, to which answers replications were filed.

On the 13th of January, 1898, F. Augustus Heinze filed in the cause a petition for leave to intervene therein, in which he alleged that he had become the owner of the interests in the claims in controversy theretofore owned by William J. McNamara, deceased, on which he had executed a mortgage to Daniel W. Connole, which petition was granted; and Heinze thereafter, to wit, March 21, 1898,

filed a cross-bill, in which he alleged his ownership and possession of an undivided one-half of the Snohomish and an undivided one-third of the Tramway claims, acquired by him from the devisees of William J. McNamara, deceased, by deed dated October 16, 1897. He also set up therein that the complainant never was the owner of any interest in either of the said claims, and was therefore not entitled to maintain the suit or to procure a sale of the premises. The complainant answered the cross-bill of Heinze, reasserting its ownership in the claims in question, as alleged in its amended bill, and to this answer a replication was filed.

Larkin died intestate in the insane asylum of the state, leaving Clara A. Larkin, a daughter, his sole heir. F. Augustus Heinze was appointed administrator of his estate; and he and Clara A. Larkin were substituted as interveners in the cause in place of the deceased, Larkin, and filed a joint and several answer to the amended bill of the complainant, and also a cross-bill. In their answer the death of James Larkin is alleged, as also the fact that he died intestate, leaving estate in Silver Bow county, Mont., and Clara A. Larkin his only child, and that as such she was entitled to all of the property of the decedent. The appointment of F. Augustus Heinze as administrator of the estate is also alleged, and, further, that for more than five years prior to the commencement of this suit James Larkin was insane, and wholly incapable of entering into any contract regarding his property; that during all of that time he was the owner of an undivided one-half of the Snohomish and of an undivided two-thirds of the Tramway mining claims, and that he was on the 4th day of May, 1893, through fraud, duress, and undue influence exercised on the part of the Butte & Boston Mining Company, and for an inadequate consideration, induced to sign an instrument in writing purporting to convey his interest in each of the mining claims mentioned to that company, and that it is by virtue of that deed that the complainant claims to own the interest in the mining claim in controversy alleged in its bill of complaint. The answer denies that the complainant is or ever was the owner of any interest in either of the claims, or that the Old Colony Trust Company has any mortgage thereon; and it is further alleged that James Larkin was, up to the time of his death, the owner and entitled to the possession of the undivided interest in the claims in question, alleged in the amended bill to belong to the complainant.

The cross-bill of F. Augustus Heinze, as administrator of the estate of James Larkin, and of Clara A. Larkin, makes substantially the same denials and allegations, and further alleges that James Larkin was adjudged insane on the 5th day of January, 1895, and committed to the State Insane Asylum of Montana; that he never recovered his mental faculties, and died on the 4th day of August, 1898; that John F. Forbis was appointed receiver of the Butte & Boston Mining Company, and as such, on the 2d day of February, 1897, assumed to sell and dispose of all of the property of that company to E. Rollins Morse, as chairman of the reorganization committee of the Butte & Boston Mining Company, and included in such conveyance the Larkin interests in the two mining claims in con-

troversy. This cross-bill sets up that the complainant was but the reorganization of the Butte & Boston Mining Company, designed for the purpose of acquiring the property of that company, and for carrying on its business, and acquired, through the proceedings indicated, the interest of the old company, with full knowledge of the insanity of Larkin on the 4th day of May, 1893; that no consideration was paid by the complainant for the property so acquired by it, and that the mortgage of the Old Colony Trust Company was acquired by it with full knowledge on its part and that of the complainant of the alleged insanity of Larkin. This cross-bill further alleges that the Butte & Boston Mining Company, Morse, and the complainant have mined and extracted from the Snohomish and Tramway claims, and converted to their own use, large quantities of valuable ores, of a value far in excess of the amount paid to Larkin for the deed obtained from him, for which they have not accounted, and that therefore the complainant is not entitled to a return of the consideration paid, but, if it shall account for the ores so extracted, the cross-complainants will pay any difference betwen the value thereof and the consideration paid by the Butte & Boston Mining Company to Larkin at the time it obtained the deed of the 4th of May, 1893. The prayer of the cross-bill of Heinze, as administrator, and of Clara A. Larkin, is that the interest in the claims in question claimed by the complainant be decreed to be the property of the cross-complainants, and that the complainant be declared to be the trustee of the legal title thereof, and be required to convey the same to the cross-complainants, and that their titles be quieted, and an account taken of all the ores mined and extracted from the claims.

A replication was filed to the answer of Heinze, as administrator, and Clara A. Larkin; and to their cross-bill the Old Colony Trust Company filed an answer, in which it denied any knowledge of the insanity of Larkin; admitted that Larkin was the owner of the inerest claimed by the complainant prior to the 4th day of May, 1893, and admitted that on that date the Butte & Boston Mining Company obtained from him a deed of such interests; denied any knowledge of any fraud, duress, or undue influence on the part of that company; and denied that the consideration paid therefor was inadequate. It alleged that the Butte & Boston Mining Company was dissolved by the disposal of its entire assets, and alleges its ignorance of the matters charged with reference to the reorganization of the company, the sale to Morse, and the conveyance by him to the complainant. To this answer a replication was filed.

The complainant also filed an answer to the cross-bill of Heinze, as administrator, and Clara A. Larkin, in which it admitted that James Larkin was prior to the 4th of May, 1893, the owner and entitled to the possession of an undivided one-half of the Snohomish, and an undivided two-thirds of the Tramway, lode claims, claimed by the complainant, and admitted that Larkin was adjudged insane on the 5th day of January, 1895, and continued in that condition until his death, on the 4th of August, 1898, in the State Insane Asylum. It denied that Larkin was insane on the 4th day of May, 1893, or at all incapable of entering into a valid contract with reference to his prop-

erty, but, on the contrary, alleged that he was then of sound and disposing mind, and denied that at any time after his execution of the deed to the Butte & Boston Mining Company, on the 4th day of May, 1893, he had any interest of any character in either of the claims in controversy. It denied that the Butte & Boston Mining Company caused or procured Larkin to sign, acknowledge, or deliver the deed by any fraudulent means, or for any inadequate consideration, but alleged that the deed was made for a fair consideration, to wit, the sum of $22,000. It admitted the dissolution of the Butte & Boston Mining Company by the disposal of all of its property, through John F. Forbis, theretofore appointed receiver thereof, to E. Rollins Morse. It denied the averments in respect to the reorganization of that company; denied that Morse paid no consideration for the conveyance, or that he was the agent of the complainant. It alleged that a number of persons associated themselves together as a committee, of which Morse was chairman, for the purpose of procuring money to purchase the property and franchises of the Butte & Boston Mining Company, and own, control, and operate the same; that Morse, as trustee of that association, purchased the property theretofore owned by the Butte & Boston Mining Company, and thereafter, to wit, on the 3d day of May, 1897, conveyed the same to the complainant for a valuable consideration; the complainant having no notice of the alleged mental condition of Larkin. It admitted the execution of the mortgage to the Old Colony Trust Company, and denied that ores had been mined by the complainant in excess of the amount paid to Larkin for the deed. To this answer of the complainant a replication was filed.

Subsequently the complainant moved the court for the appointment of a receiver, which motion was based upon the affidavit of its assistant superintendent, C. S. Batterman, which stated, among other things, that after the filing of the cross-bill of F. Augustus Heinze he conveyed a portion of his interest in the claims in question to Arthur P. Heinze; that on or about May 4, 1898, an action was begun in the district court of the state of Montana, in and for the county of Silver Bow, by James Larkin, an insane person, through Richard J. Watson, his guardian ad litem, against the Butte & Boston Consolidated Mining Company and others, setting up the same facts as are set up in the cross-bill of F. Augustus Heinze, as administrator, and Clara A. Larkin, in the present suit, and that in the action so brought in the state court the plaintiff asked and procured from that court an injunction against the present complainant from mining any ore upon the claims here in controversy, and in or upon certain veins alleged to have their apexes therein; that the suit so brought in the state court was, on motion of the present complainant, removed from the state court to the court below, in which court F. Augustus Heinze, as administrator of the estate of James Larkin, deceased, and Clara A. Larkin, were substituted for the original plaintiff in the cause, and in which cause the court below thereafter, to wit, on the 16th day of September, 1898, granted an injunction restraining the Butte & Boston Consolidated Mining Company, among others, from mining or extracting any ores within the limits of the Snohomish or Tram-

way claims, or from the veins alleged to have their apexes therein, which injunction continues in force; that the injunction so issued was based upon the allegations of the plaintiffs in the cause to the effect that Larkin was insane at the time he executed the conveyance to the predecessor in interest of the present complainant, and was issued to preserve the property pending the trial of that issue; that, notwithstanding the injunction so issued against the complainant in the present suit, F. Augustus Heinze and Arthur P. Heinze began to mine the claims in question, and to extract therefrom large quantities of ore, and to convert the same to their own use; that the Heinzes excluded and continue to exclude the complainant from any access to the claims in question, and so bulkheaded and barricaded the works as to prevent the complainant, through its agents, from entering or examining the claims or their workings; that the ores so extracted by the Heinzes from the claims in question have been converted to their own use, and that the complainant has not been permitted to share in the proceeds derived therefrom, or to sample the ores which have been so extracted, or to take any account thereof; that the complainant has no means of ascertaining the quantity or character of the ores so extracted from the claims in question; that the ores so taken from the claims in question by the Heinzes have been extracted through the workings of the Montana Ore Purchasing Company on the Rarus lode claim, and have been reduced and smelted in the works of the Montana Ore Purchasing Company, of which company F. Augustus Heinze is the president and general manager, and Arthur P. Heinze is the secretary, and that the ores which have been so extracted from the claims in controversy have been mixed with other ores, and that no accurate account thereof is being kept, so far as the complainant can ascertain; that on or about June 26, 1899, the complainant demanded of the Montana Ore Purchasing Company and of F. Augustus Heinze that it be allowed to inspect and survey the claims in question, and the underground workings of the claims through which the ores from the claims in question were being extracted, which demand was refused; that on or about the ——— day of April, 1898, Clara A. Larkin executed to John J. McHatton, the attorney of F. Augustus Heinze, an agreement wherein and whereby she bound herself to execute a proper deed of conveyance of any interest which she might recover in the claims in question, and that subsequently, to wit, June 3, 1898, McHatton assigned to Arthur P. Heinze all rights acquired by him under that contract; that the Heinzes have completely ousted and excluded the complainant from the underground workings of the claims in question.

Upon the affidavit of Batterman, an order was made on the defendants and cross-complainants to show cause why a receiver should not be appointed, in answer to which F. Augustus Heinze, individually and as administrator of the estate of James Larkin, deceased, and Clara A. Larkin set up that Heinze as administrator, and Clara A. Larkin have never taken any possession of the claims in question, or mined or extracted any ores or mineral therefrom, and have never converted any such ores or mineral to their own use, and have no

intention of so doing.   They admitted the issuance of the injunction against the complainant, as stated in the affidavit of Batterman, and prayed that the application for the appointment of a receiver and an injunction be dismissed as to them.

F. Augustus Heinze individually made answer to the order to show cause, and alleged that he and Arthur P. Heinze are the owners in possession, and entitled to the possession, of an undivided one-half of the Snohomish and an undivided one-third of the Tramway claims, Arthur P. Heinze being the owner of an undivided one-fourth of the Snohomish and of an undivided one-sixth of the Tramway; that he and Arthur P. Heinze have for a long time been in the actual possession of certain underground workings within those claims, and have been and still are engaged in mining and extracting ores therefrom; that all of those underground workings were made by them, and that the complainant never had any possession thereof; that they are, and at all the times while they have been so in possession and engaged in mining the said claims they have been, entitled to do so by virtue of an act of the Legislature of the state of Montana entitled "An act to amend section 592 of the Code of Civil Procedure of Montana relating to property held in joint tenancy and tenancy in common" (Laws 1899, p. 134), and that prior to the passage of that act they were for a long time in possession and carrying on mining operations therein for the purpose of thereafter extracting ore therefrom, which mining operations were carried on with the knowledge and consent of the complainant; that they were in possession of said portion of the claims in question, and engaged in mining ores therefrom, long prior to June 1, 1899, and that while they were so in possession and engaged in mining such ores the complainant herein brought an action in the district court of the Second Judicial District of the state of Montana to enjoin their operation; that afterwards said application for an injunction was fully heard by that court, which on the 9th day of May, 1899, denied the injunction; that he and Arthur P. Heinze have caused to be kept accurate accounts of the amount and value of all ores extracted by them from the claims in question; and that they have heretofore offered to account to the complainant therefor upon its paying the proportionate share of the expenses of the said mining operations, and have offered to deliver upon the dump the proportion of ore claimed by the complainant herein upon the payment to them of a proportionate share of the expenses of mining such ore.   The answer of F. Augustus Heinze to the order to show cause denied any exclusion by himself or Arthur P. Heinze of the complainant from the Snohomish or Tramway claims, or the underground workings thereof, or that either he or Arthur P. Heinze ever refused to permit the complainant or its agents to inspect or examine the same, but, on the contrary, avers that the complainant, through its agents, has made several inspections of the workings made by himself and Arthur P. Heinze within the claims in question; denies that the complainant has no means of ascertaining what ores he and Arthur P. Heinze have extracted from the Snohomish and Tramway claims, or the grade or quality thereof, or what disposition they have made of the proceeds, and avers that no ores which have been extracted by

them from those claims have been mixed with other ores until after an account of the amount and assay value thereof had been taken, and that an account of the amount and assay value of all ores which have been extracted from either of the claims in question has been kept, and that the complainant has been informed thereof; denies that the complainant has no way of ascertaining in what parts of the Snohomish and Tramway claims he and Arthur P. Heinze are carrying on their mining operations, but, on the contrary, avers that it has full opportunity to obtain the information, and has had full knowledge thereof; that, upon its coming to the knowledge of the respondent F. Augustus Heinze that a demand had been made upon the foreman of the Rarus mine for the admission of the representative of the complainant into the underground workings of the Snohomish and Tramway claims, respondent gave orders to said foreman to admit such representative, and so notified the complainant; denies that he and Arthur P. Heinze are converting to their own use, or have so converted, all of the ores extracted from the mining claims in question, but, on the contrary, alleges that on or about June 27, 1899, the respondent F. Augustus Heinze notified the complainant that the portion of ore claimed by it would be stored until the actual cost of mining the ore from the Snohomish and Tramway claims had been ascertained; that such portion of the ore has been stored, and that on the 8th day of July, 1899, he mailed to the complainant a statement of the cost of mining the ore, and requested payment of the amount due for mining the portion which it claims, and offered, upon the payment of said amount, and the payment by the complainant of the actual cost of mining the ore stored, and the actual cost of mining the ore in the future, to deliver the portions claimed by the complainant, on the dump.

On the 27th of July, 1899, the court below entered an order appointing John S. Harris receiver of the interest in the Snohomish and Tramway claims, "which is claimed by the complainants herein, and which is also claimed by the cross-complainants, F. Augustus Heinze, as administrator of the estate of James Larkin, deceased, and Clara A. Larkin, in their cross-complaint filed in this action"; describing an undivided one-half of the Snohomish claim, and an undivided two-thirds of the Tramway claim, and authorizing and directing the receiver to "enter into the possession of said lode claims, and all veins belonging thereto, together with all underground workings thereon, and of the property above described of the other tenants in common, F. Augustus Heinze, and persons claiming under him since commencement of this action"; and further authorizing the receiver "to operate and mine any portion of the said lode claims, or either of them, not now being mined or worked of the said co-tenants,. F. Augustus Heinze, and all parties claiming under him since the commencement of this action, or either of them, or their agents, representatives, or lessees, and to take charge of all ores which may be extracted by him from said mines, and to have the same reduced or smelted, subject to the right of the said co-tenants to receive their proportionate share of all ores upon the dumps upon the payment of the actual reasonable cost of mining and hoisting the same, or

subject to an accounting to nonjoining co-tenants for their proportionate shares of the net profits of said mining operations"; and declaring that "the said receiver shall sell, dispose of, or have reduced or smelted, the said ore or ores extracted from said claims, or either of them, so as to realize the most money therefrom, and, after paying expenses incidental to the conduct of such mining business, to hold the proceeds arising therefrom pending the determination of the issues of this action"; and further authorizing and directing the receiver "to receive and demand of said co-tenants, F. Augustus Heinze, and all parties claiming under him since the commencement of this action, or either of them, or their agents or lessees, his proportionate share, to wit, two-thirds of the Tramway lode claim, and one-half of the Snohomish lode claim, on the dump, of all ore or ores which may be extracted from said premises, or from any veins claimed to belong thereto, by the said co-tenants, or either of them, or their agents or lessees"; and authorizing and directing the receiver "to, as soon as possible after his appointment and qualification, take and receive said ores as the same shall be mined from said premises, and to sell, reduce, or otherwise convert into money, as the said receiver shall deem best, and so as to realize the most from said ores so received, and shall on the 21st day of each month, beginning on the 21st day of August, 1899, pay to said F. Augustus Heinze, and those claiming under him, or their agents duly authorized, his proportionate. share of the actual and reasonable cost of mining and hoisting the said ores so delivered during the month previous thereto." The order appointing the receiver further directed:

"That the said F. Augustus Heinze, and all parties claiming under him since the commencement of this action, or either of them, or their agents, or any person or persons claiming under them, or either of them, shall deliver to said receiver, his agent, representatives, or lessees, two-thirds of the ore extracted from the Tramway lode claim, or from any veins belonging thereto, or having their tops or apices within the said Tramway claim, and one-half of all ore extracted from the Snohomish lode claim, or any veins belonging thereto, or having their tops or apices within said Snohomish lode claim, upon the dump, upon same being hoisted or otherwise removed from said premises."

The order further directed that F. Augustus Heinze, and all persons claiming under him, shall at all times afford the receiver, his agents or representatives, free access to the premises, and to all underground workings therein, and all workings or veins belonging thereto, in the actual control or possession of the said co-tenants, their representatives, or persons claiming under them, for the purpose of inspecting the operations therein conducted, and of obtaining any information in connection with said operations and the costs thereof which the receiver may deem necessary; and all parties to the suit, their agents and representatives, were enjoined from interfering with the receiver in the performance of any of his duties.

The receiver did not engage in mining the claims in question under this order, but demanded and received from F. Augustus Heinze the proportion of the ores from each of the claims required to be delivered by the order, and filed his first account on the 21st of August, 1899; his second, September 21, 1899; his third, October 26,

1899; his fourth, November 28, 1899; his fifth, December 30, 1899—and asked for their settlement and allowance. The cross-complainants, F. Augustus Heinze and Clara A. Larkin, filed exceptions thereto, which, after hearing, were settled by an order entered February 1, 1900, in which the receiver was directed to pay to F. Augustus Heinze an additional amount in the sum of $3,040.39. The receiver filed his sixth account January 29, 1900; his seventh account, February 28, 1900; his eighth account, March 27, 1900, and his ninth account, April 26, 1900.

The sixth, seventh, and eigth accounts were objected to by F. Augustus Heinze, and upon their settlement the receiver was ordered to pay to Heinze further sums of money. The receiver rendered his tenth account, entitled "Final Report of First Receivership," June 4, 1900. In this the receiver accounted for the ores received and expenses incurred up to March 17, 1900. Shortly prior to this, to wit, February 26, 1900, an application was made to the court below for an extension of the receivership—

"Over the whole of said Snohomish and Tramway lode claims, and to direct and empower said receiver to take and assume possession and control of the whole of said Snohomish and Tramway lode claims, and to operate the said Snohomish and Tramway claims, and to take charge of all ores extracted from said claims, and from any veins belonging thereto, or having their tops or apexes therein, and generally to have the supervision and control of said lode claims, and the proceeds thereof, pending the determination of the several issues in this action; to pay all expenses incident to the mining of said properties, and to hold the proceeds arising therefrom for the respective parties thereto, in accordance with the several interests in said claims, and with full power and authority to hold, control, and operate said several properties, and to hold and retain the proceeds arising therefrom, for the benefit of the several parties to this litigation, until it shall be finally determined who is entitled thereto, and for such other power and authority as to the court may seem proper with which to invest the said receiver."

This application was based upon another affidavit of Batterman, the grounds of which are, in substance, that the Heinzes surreptitiously extracted ore from the claims in question, without delivering to the receiver his proper portion, and removed large quantities of ore from the claims without the knowledge of the receiver, by covering the cars with waste, and that the receiver was obliged to employ a large number of inspectors to look after the mining operations, at a cost of about $2,000 a month; that the Heinzes had made excessive, fictitious, and fraudulent charges for the mining of the ore, which had resulted in the court being obliged to hear contests on the settlement of the receiver's accounts with reference thereto; that the ores were being hoisted through the Montana Ore Purchasing Company's works, and that the same could be mined successfully and economically by means of shafts owned and controlled by the complainant. Corroborative affidavits were filed by the complainant in support of that of Batterman, which was based upon his information and belief in so far as the fraudulent acts of the Heinzes were concerned; and the cross-complainants filed various affidavits in contradiction of the matters set up in the affidavits presented on the part of the complainant, after hearing and considering which, the court below made an order extending the receivership to the whole

of the mining claims in question, and to all veins belonging thereto, together with all underground workings therein, and authorizing and empowering the receiver—

"To operate and mine any and all portions of said lode claims, or either of them, and to take charge of all ores which may be extracted by him from said mines, and to have the same reduced and smelted, and to sell and dispose of the profits of said mines so as to realize the most money therefrom, and after paying all the expenses incident to the conduct of said mining operations, and the smelting and reducing of the said ores, and the expenses of this receivership, to pay to said F. Aug. Heinze and Arthur P. Heinze, or either of them, or their duly authorized agents, one-third (⅓) of the net proceeds of all ores extracted by the said receiver from the said Tramway lode claim, and one-half (½) of the net proceeds of all ores extracted by said receiver from the said Snohomish lode claim; or the said receiver may, and he is hereby authorized and empowered, if he shall deem it to the best interest and advantage of all persons interested in said Snohomish and Tramway lode claims, and practicable so to do, deliver to the said F. Aug. Heinze and Arthur P. Heinze one-half (½) of all ores extracted by him from the said Snohomish lode claim, and one-third of all ores extracted by him from the said Tramway lode claim, upon the dumps of the respective lode claims, or at any other such place or places within said lode claims or adjacent thereto, as shall be by the said receiver deemed practicable, and as shall be agreed upon by and between the said receiver and the said F. Aug. Heinze and Arthur P. Heinze, upon being paid by the said F. Aug. Heinze and Arthur P. Heinze one-third (⅓) of the actual, reasonable cost of mining, tramming, and hoisting the ore extracted by said receiver from the said Tramway lode claim, and one-half of the actual, reasonable cost of mining, tramming, and hoisting all ores extracted by said receiver from said Snohomish lode claim, together with the proportionate share of the cost of this receivership chargeable to said F. Aug. Heinze and Arthur P. Heinze. And if said receiver shall determine to deliver to said F. Aug. Heinze and Arthur P. Heinze one-third (⅓) of all of the ores extracted from said Tramway lode claim, and one-half (½) of all of the ores extracted by him from said Snohomish Lode Claim, upon the dumps of the said respective lode claims, or at such other place or places as shall be agreed upon by and between the said receiver and the said F. Aug. Heinze and Arthur P. Heinze, upon payment by the said F. Aug. Heinze and Arthur P. Heinze of one-third (⅓) of the actual, reasonable cost of mining, tramming, and hoisting all ores extracted by said receiver from said Tramway lode claim, and one-half (½) of the actual, reasonable cost of mining, tramming, and hoisting all ores extracted by him from the said Snohomish lode claim, together with a proportionate share of the cost of this receivership chargeable to the said F. Aug. Heinze and Arthur P. Heinze."

This order of extension further directed that:

"The said F. Aug. Heinze and Arthur P. Heinze shall upon the 21st of each and every month hereafter, commencing with the 21st day of March, 1900, pay to said receiver their proportionate share of the actual reasonable cost of mining, tramming, and hoisting said ores so delivered during the month previous thereto, together with their just proportion of said receivership chargeable to said F. Aug. Heinze and Arthur P. Heinze."

It further directed the Heinzes to deliver to the receiver full possession and control of the whole of the mining claims in question, and of all underground workings therein, and of all ore bodies therein or appurtenant thereto, and enjoined them and all persons claiming under them from interfering with the receiver's possession of the property.

Voluminous evidence on behalf of the respective parties having been given, the same was by the court referred to a special master, with instructions to make and report findings of fact and conclusions

of law. Upon the coming in of the findings, they were approved by the court (the findings being to the effect that James Larkin, at the time of executing his deed to the Butte & Boston Mining Company for his undivided one-half of the Snohomish and his undivided two-thirds of the Tramway claims, had sufficient mental capacity to understand the nature and consequences of the transactions, and that the consideration received by him therefor from that company, to wit, $25,850, was adequate), and the cross-bills of Larkin and the representatives of his estate were dismissed, at their cost. And the findings further showing that the complainant thereafter acquired, and at the time of the commencement of the suit held, the undivided interests thus conveyed to the Butte & Boston Mining Company, and that the defendant F. Augustus Heinze is the owner of the other undivided interests in the claims, and that the property is of such a nature that it cannot be fairly divided between the said tenants in common, the court decreed a sale of the premises, and, after providing for the protection of the rights of other defendants to the suit, and for the payment of the costs of the proceedings, directed the payment of the proceeds to the complainant and the defendant F. Augustus Heinze in accordance with their respective interests, as stated in the findings and established by the decree. From that decree the appeal is brought.

On appellants' behalf it is urged, first, that the court below had no jurisdiction of the suit, for the reason, as contended, that it is not alleged in the bill that the complainant was in possession of the property sought to be partitioned at the time of the commencement of the suit; second, that the court below was without jurisdiction, because of a denial of the complainant's alleged title; third, that the decree appealed from is erroneous, in that it is against the evidence and the rights of the appellants; fourth, that the order appointing the receiver was erroneous, and beyond the power of the court to make; fifth, that the orders extending the powers of the receiver over the whole of the claims in question were likewise erroneous, and beyond the jurisdiction of the court; sixth, that the order allowing the receiver to enter into the contract with the Boston & Montana Mining Company for the reduction of ores mined by the receiver was beyond the power of the court to make; and, seventh, that the orders of the court below settling the receiver's accounts are erroneous and in excess of its jurisdiction. All these orders, it is contended on behalf of the appellants, may and only can be reviewed on their appeal from the final decree; there being at the time of the making of them no direct appeal therefrom allowed by statute.

The right to a partition of real estate presupposes a common interest in the parties between whom it is sought to have a division made. And to the assertion of such a right in a court of equity it has always been essential for the bill to show a present right of possession in the complainant, as well as title. Adams v. Iron Co., 24 Conn. 230; Florence v. Hopkins, 46 N. Y. 182; Clapp v. Bromagham, 9 Cow. 530; Woodworth v. Campbell, 5 Paige, 518; Freeman on Co-Tenancy & Partition, §§ 446, 447; note to case of Nichols v. Nichols, 67 Am. Dec. 703, and the numerous cases there cited. In

the state of Montana, where the property here in controversy is situate, a statute of the state gives the right of partition to such tenants in common and joint tenants as have possession of the property sought to be divided. The statute is as follows:

"When several co-tenants hold and are in possession of real property as joint tenants or tenants in common, in which one or more of them have an estate of inheritance or for life or lives, or for years, an action may be brought by one or more of such persons for a partition thereof, according to the respective rights of the persons interested therein, and for a sale of such property or a part thereof, if it appears that a partition cannot be made without great prejudice to the owners." Section 1340, Code Civ. Proc. Mont.

The federal courts will give effect to that statutory revision. Frost v. Spitley, 121 U. S. 552, 7 Sup. Ct. 1129, 30 L. Ed. 1010; Holland v. Challen, 110 U. S. 15, 25, 3 Sup. Ct. 495, 28 L. Ed. 52.

In the bill in the present suit there is no averment of possession of the property sought to be partitioned, nor any express averment of a present right of possession, either in the complainant or in any of the defendants; the allegations simply being that the complainant is the owner of certain undivided interests in the property, and that certain of the defendants are the owners of the other undivided interests therein.

Conceding that, from the averment of ownership, such a presumption of a present right of possession necessarily flows as would answer the requirement of the equitable rule, in the absence of the Montana statute, and conceding further that the omission from the bill of an allegation of the possession required by that statute may be helped out and supplied by an averment found in the answer and cross-bill of Larkin, and in the cross-bill of F. Augustus Heinze and Clara A. Larkin, the representatives of his estate, to the effect that the predecessor of the complainant (the Boston & Montana Mining Company) entered into the possession of the property under its deed from Larkin, and retained such possession until the delivery thereof to Forbis, the receiver of its property, still the answers of the defendants put in issue the alleged title of the complainant (that of Larkin, as well as his cross-bill, both of which were filed by leave of the court, and by the guardian of Larkin theretofore appointed for that purpose, alleging, in substance, that the deed from him, under which the complainant asserts title, was obtained while he was insane, and also for an inadequate consideration, and by means of fraud); his answer concluding with this allegation and prayer:

"Said James Larkin, by the said Richard J. Watson, and upon the information and belief of said Richard J. Watson, alleges that he is now, and at all of the times mentioned in said bill of complaint was, the owner and entitled to the possession of said undivided one-half of the said Snohomish lode claim, and the said undivided two-thirds of the said Tramway lode claim, mentioned and described in said amended bill of complaint, and which the complainant claims to own. Wherefore said James Larkin prays that this action be stayed; that the complainant take nothing thereby, and that the same may be dismissed; and that he and his said guardian may have judgment for their costs most wrongfully incurred herein."

The defendants John McNamara, Bridget McNamara, Daniel W. Connole, Catherine Sullivan, Patrick Sullivan, and Joseph Connole

also moved the court below to stay the suit, and all proceedings therein, on the grounds, first—

"That these several defendants deny the plaintiff's ownership or possession or right to possession of the mining claims sought to be partitioned in this action, and deny that the plaintiff is a tenant in common or jointly possessed with them in said premises, or any part thereof; and, second, because it appears from the pleadings herein, and especially from the answers of said defendants, that the plaintiff's title to said premises and every part thereof is denied, and that the question of title cannot be litigated or determined in this action, and can only be litigated and determined in an action at law"; the prayer being, "that this action and all proceedings herein be stayed until plaintiff shall have established its title in an action at law, and that if the plaintiff shall not, with[in] a reasonable time hereafter, institute an action at law for the purpose of establishing its title or claim of right to the premises described herein, and to which the defendants dispute plaintiff's title, that this action be dismissed."

A similar motion was made by the cross-complainant F. Augustus Heinze, and on similar grounds. These motions were made April 30, 1898—the amended bill having been filed October 6, 1897—and were overruled by the court July 21, 1898. Thereafter evidence was taken in respect to the issues made by the pleadings, upon which the special master made and reported the findings of fact and conclusions of law thereafter approved by the court, the effect of which is hereinbefore stated, and upon which the decree of the court below is based.

Thus the court below, in an action of partition in which the title claimed by the complainant, at least, was put in issue, overruled motions made by the defendants and cross-complainants for the suspension of proceedings in the partition suit until the parties should have that issue determined at law, and proceeded to itself to determine the question of title, as well as of all the other issues, in the one suit. As has been shown, the bill contains no express averment in respect to the possession of the property, nor of the right to its possession, either by the complainant or the defendants. It therefore contains no express allegation upon which an issue as to the complainant's possession or right to possession could have been expressly taken. But as the possession relied upon by the complainant is an implied one, flowing from the alleged ownership of an undivided interest in the property, a denial of such ownership would seem to clearly put in issue any such implied possession. The allegations of the cross-bills of Larkin and of the representatives of his estate, F. Augustus Heinze and Clara A. Larkin, to the effect that the complainant's predecessor, the Butte & Montana Mining Company, entered into possession of the property under Larkin's deed to it, and retained such possession until its delivery to Forbis, the receiver of its property, did not allege that such possession was ever taken or held by the complainant. And, as has been seen, the motions made for a stay of proceedings in the suit were based in part upon the allegation that the complainant never had either title to or possession of any part of the premises in controversy. But whether or not the question of possession or right to the possession of the property by the complainant can be said to have been put in issue by the pleadings, there can, I think, be no sort of doubt that the pleadings did

raise an issue as to the complainant's alleged title to an undivided interest in the claims. Indeed, the main issue in the case was whether or not the deed from Larkin to the Butte & Montana Mining Company, under which the complainant claims, was or was not in fact a deed of conveyance. This is shown not only by the pleadings, but in the very voluminous evidence on the point, and by the findings. If Larkin was in truth insane at the time of the execution of the instrument, it was, of course, no deed at all—nothing more than so much blank paper. Manifestly, that was a question of fact upon which the parties were, by virtue of the Constitution of the United States, entitled to a jury trial. By compelling them to litigate that issue in the equity suit the complainant brought for the partition of the property, as the court below did by failing and refusing to suspend proceedings therein, and remitting the parties to an action at law to determine the question of title, the court, in effect, deprived them of the absolute right they had to a jury trial upon the issue of deed or no deed, for it will hardly be contended by any one that either party had an absolute right to a jury trial upon any issue in a suit in equity in a federal court. Even where such a court allows a jury trial upon one or more issues, the verdict is but advisory to the court, and in no sense binding. This is the universal rule. The failure of the appellants to ask for a jury trial upon the issue as to the sanity of Larkin, in the equity suit to which they were confined by the court below, cannot, therefore, be properly regarded as a waiver of the absolute, constitutional right thereto that belonged to them. Moreover, a partition suit, except in state courts under state statutes allowing a trial of legal and equitable questions in the same action, is not the proper forum in which to litigate controverted questions of title; and such is the well-established doctrine. Thus, the Supreme Court, in speaking through Mr. Justice Miller of the chancery practice in partition, distinctly declared in the case of Gay v. Parpart, 106 U. S. 679, 689, 1 Sup. Ct. 456, 465, 27 L. Ed. 256:

"That system does not deal with or decide questions of controverted title. Its purpose is to make division among the parties, before the court, of real estate in which they had interests or estates that were not in controversy as among themselves."

And in the case of McCall v. Carpenter, 18 How. 297, 15 L. Ed. 389, where it was contended that a decree in a partition suit was conclusive in respect to a deed which it was sought to avoid on the ground that the grantor therein was insane at the time of executing it, and also on the ground that it was obtained by means of fraud and for an inadequate consideration, the same learned court, after showing that those questions were not involved or determined in the partition suit there in question, further declared:

"And the better opinion is that no such question could have been raised by the defendants in that proceeding if they had sought to invalidate the deed. The most that the court would have been justified in doing, in the usual course of proceeding, would have been to have stayed the suit in partition till the question could have been settled at law. The proceedings in partition are not appropriate for a litigation between parties in respect to the title."

If it be said that this was but obiter dictum, it may be answered that, if so, it is dictum emanating from the Supreme Court of the United States, and is abundantly sustained by other authorities. Chapin v. Sears (C. C.) 18 Fed. 814; Rich v. Bray (C. C.) 37 Fed. 273, 2 L. R. A. 225; Brown v. Coal Co. (C. C.) 40 Fed. 849; American Ass'n v. Eastern Kentucky Land Co. (C. C.) 68 Fed. 721; Fuller v. Montague, 59 Fed. 212, 8 C. C. A. 100, and cases there cited.

A different rule prevails in the state courts of those states whose statutes vest in one court the power to determine in one action all questions of both a legal and equitable nature, as do the statutes of California, Montana, and many other states. The distinction between the two systems is very clearly and forcibly pointed out by the Supreme Court of California in passing upon a petition for rehearing in the case of Bollo v. Navarro, 33 Cal. 459, 467, where Mr. Justice Sanderson, speaking for the court said:

"Whether the plaintiff and defendant are tenants in common is the first issue to be tried, if made, in an action of this character [partition]. If the court finds the issue in favor of the defendant, the action is at an end. The idea that a party sued in partition cannot deny that he is a tenant in common, and set up that he is the sole owner of the premises, is simply preposterous. There never has been a time when he could not. Under the old system [the chancery system], if this was done, the partition was stayed, and the parties were sent to a court of law to try the issue, for the simple reason that a court of equity could not try it. If the court of law found the issue in favor of the plaintiff, the court of chancery then proceeded with the partition; if for the defendant, the bill was dismissed. But the reason for this practice does not exist under our system. On the contrary, we have but one court, which has in the premises all the powers of both law and equity courts under the old system; and there is therefore in such a case no necessity for two actions, one at law and the other in equity, as under the former system. On the contrary, the court proceeds in one action, and first tries and determines all the questions at law, and, if the decision is favorable to the plaintiff, then takes up and disposes of the equitable part of the case; if for the defendant, the partition is denied without any further action. This was expressly decided in De Uprey v. De Uprey, 27 Cal. 329, 87 Am. Dec. 81, and reaffirmed in Morenhout v. Higuera, 32 Cal. 289; but as counsel is disposed not to so understand those cases, we have thought proper again to declare such to be the rule."

I am also of opinion that the court below was in error in appointing a receiver of the interests claimed by the complainant, with power to work and operate the mines, and in subsequently extending the receivership over the entire property, with like powers. The instances are rare, as said by this court in Tornanses v. Melsing, 106 Fed. 775, 45 C. C. A. 615, where a court is justified in appointing a receiver of a mine or mining claim, and still rarer where it is justified in appointing one with the power to work a mine, and thereby extract the mineral, which usually constitutes the sole value of such property, for, as said in the case just cited:

"The value of mining property of every character, like the value of any other kind of property, largely depends upon the manner in which it is operated. Many good mines prove unprofitable because of loose management or extravagant methods of working them."

Of course, there may be, and sometimes are, cases where the proper preservation of the property requires the appointment of a receiver, who may, when the necessities of the case require it, be authorized to

operate the property. But that the instances are rare, and that a strong showing must be made, is well established. See, also, Cosmos Exploration Co. v. Gray Eagle Oil Co. (C. C.) 104 Fed. 20; Cabaniss v. Reco Mining Co., 116 Fed. 323, 54 C. C. A. 190; Moore v. Bank (C. C.) 106 Fed. 579; Overton v. Memphis & L. Co. (C. C.) 10 Fed. 866; Latham v. Chaffee, 7 Fed. 525; Schack v. McKey, 97 Ill. App. 460; Heinze v. Kleinschmidt (Mont.) 63 Pac. 927. In the present case no such showing was made, in so far as the mining of the property was concerned. If by reason of the relation of the claims in question to the adjoining mining claims, or for any other cause, injunction would have proven inefficient to maintain the property intact for the benefit of whomsoever should be finally adjudged to own it, and a receiver was more effective for that purpose, still there was no justification shown for extending to such officer the power to work the mines and extract the ores therefrom pending the litigation.

The orders appointing the receiver and extending the receivership, with power in that officer to work the mines, are reviewable on appeal from the final judgment in this case. Forgay v. Conrad, 6 How. 201, 12 L. Ed. 404; Perkins v. Fourniquet, 6 How. 206, 12 L. Ed. 406; Buckingham v. McLean, 13 How. 150, 14 L. Ed. 90; Railroad Co. v. Soutter, 2 Wall. 520, 17 L. Ed. 900; Grant v. Ins. Co., 121 U. S. 116, 7 Sup. Ct. 841, 30 L. Ed. 905. And as they should, in my opinion, be reversed for the reasons stated, it results that the further orders complained of, which are dependent upon them, should likewise fall.

I think the judgment and orders should be reversed.